MIED (Rev. 03/11) Prisoner Civil Rights Complaint

1)

| Official Use Only | | |
|---|---|---|
| Case Number | Judge | Magistrate Judge |
| | | |

Case: 2:12-cv-12038
Judge: Tarnow, Arthur J.
MJ: Hluchaniuk, Michael J.
Filed: 05-07-2012 At 09:44 AM
PR Berkshire v Dahl,et al (tam)

# PRISONER CIVIL RIGHTS COMPLAINT

*This form is for use by state prisoners filing under 42 U.S.C. § 1983 and federal prisoners filing pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

## Plaintiff's Information

| Name | Randy Berkshire | Prisoner No. | 371645 |
|---|---|---|---|

| Place of Confinement | Macomb Correctional Facility |
|---|---|

| Street | 34625 26 Mile Road | City | New Haven | State | MI | Zip Code | 48048 |
|---|---|---|---|---|---|---|---|

| Are there additional plaintiffs? | ☐ Yes | ☒ No |
|---|---|---|

*If yes, any additional plaintiffs to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide names, prisoner numbers and addresses for all plaintiffs.*

## Defendant's Information

| Name | Debra Dahl | Position | Unit Chief |
|---|---|---|---|

| Street/P.O. Box | 34625 26 Mile Road | City | New Haven | State | MI | Zip Code | 48048 |
|---|---|---|---|---|---|---|---|

| Are you suing this defendant in his/her: | ☐ Personal Capacity | ☐ Official Capacity | ☒ Both Capacities |
|---|---|---|---|

| Are you suing more than one defendant? | ☒ Yes | ☐ No |
|---|---|---|

*If yes, any additional defendants to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.*

1

DEFENDANTS

1. Debra Dahl is the Unit Chief. She is legally responsible for the operation of efficient and effective management, and for the welfare of all inmates in the Residential Treatment Program.

2. Donna Beauvais is the Unit Chief. She is legally responsible for the operation of efficient and effective management, and for the welfare of all inmates assigned to Outpatient Mental Health.

3. C. Sermo is a psychologist with the Outpatient Mental Health who is trained and experienced in the areas of mental illness or mental retardation and is licensed or certified by the State of Michigan to practice within the scope of his professional training.

4. Dr. Pozios is a psychiatrist with the Outpatient Mental Health who is trained and experienced in the areas of mental illness or mental retardation and is licensed or certified by the State of Michigan to practice within the scope of his professional training.

5. John Doe #1 is a Lt. assigned to 3rd shift and is responsible for the efficient and effective management of the facility.

6. Jonh Doe #2 is a Sgt. assigned to 3rd shift and is responsible for the efficient and effective management of the housing units.

Each Defendant is sued individually and in his/her Official capacity. At all times mentioned in this complaint each Defendant acted under color of state law.

Each Defendant is employed with the Michigan Dep't of Corrections:

Macomb Correctional Facility
34625 26 Mile Road
New Haven, Michigan 48048

1

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

## I. PREVIOUS LAWSUITS

Have you filed any other lawsuits in state or federal court relating to your imprisonment?

☒ Yes          ☐ No

If "Yes," complete the following section. If "No," proceed to Part II.

Please list all prior civil actions or appeals that you have filed in federal court while you have been incarcerated.

| | |
|---|---|
| Docket or Case Number: 1:10-cv-942 | |
| Name of Court: United States District Court/Western District | |
| Parties (Caption or Name of Case): Randy Berkshire v. Cindi Curtin, et al., | |
| Disposition: Open | |

| | |
|---|---|
| Docket or Case Number: | |
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

| | |
|---|---|
| Docket or Case Number: | |
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

***Any additional civil actions should be listed on a separate sheet of 8½" x11" paper and securely attached to the back of this complaint.***

## II. STATEMENT OF FACTS

I was sent to Macomb Correctional Facility to be placed in the Residential Treatment Program on July 1, 2011 from a crisis stabilization program. It was determined that I suffer from a substantial disorder of thought or mood, which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.

March of 2012 I was elected as the Housing Unit Representative. Pursuant to the Michigan Dep't of Corrections Policy Directive 04.01.150, my duties serve solely in an advisory capacity to the administration. I addressed the complaints and concerns affecting a class of prisoners. On March 19,2012 I submitted a three page complaint to RUM Wilson and to the Defendant Debra Dahl. The complaint addressed several deprivations amounting to constitutional violations. On March 23,2012 I was discharged out of the Residential Treatment Program in retaliation for the exercise of my right to access to both administrative and judicial forums for the purpose of seeking redress of grievances against the officers, secured under the First Amendment.

I was discharged from the Residential Treatment Program without a mental health assessment, diagnostic evaluation and treatment or disposition planning. I was transferred to a lower level of care where it offered less privileges, less opportunities for out of cell movement, less groups, services, and rehabilitation programs.

On March 26,2012 my Business Education Technology teacher Ms. D. Jones conveyed to Defendant Donna Beauvais that I appeared to be mentally unstable. After expressing my instability to the Defendant she issued Plaintiff a class 1 misconduct for threatening behavior and had me placed in segregation. Shortly afterwards, I began to exhibit self-injurious behaviors. I deprived myself of all food and liquids.

On March 27,2012 I was found unresponsive inside my cell by RUO Tripp. Emergency medical treatment was provided and Plaintiff was rushed to the hospital via ambulance where I was admitted until March 29,2012. I was transferred back to Macomb Correctional Facility and placed back in a temporary segregation cell. Pursuant to the Michigan Dep't of Corrections Policy Directive 04.06.115, my self-injurious behaviors warranted placement in an observation cell.

On March 29,2012 I began to exhibit self-injurious behaviors. I deprived myself of all food and liquids.

On March 30,2012 it was noted in the Health Care logbook and Defendant Pozios was informed that Plaintiff's psychotropic medications had expired. Defendant Pozios had deliberately refused to renew the order for those medications. The psychotropic medications perscribed to Plaintiff, is used to help Plaintiff rehabilitate his severe mental disorders, including suicidal attempts.

On March 31,2012 medical staff were forced into Plaintiff's cell to conduct a medical assessment of his health and safety due to self-injurious behaviors.

1

On April 1,2012 staff physically escorted me to health services where medical staff provided Plaintiff a thorough evaluation due to the continuation of self-injurious behaviors. After the evaluation was completed, Lt. Wehberg ordered staff to place me in an observation cell.

On April 2,2012 staff rushed into my cell to find that I had been in an unconscious state where I had been lying in urine and feces. Staffed forced me in a wheelchair and escorted Plaintiff to health services where a series of medical tests were conducted. I entered segregation on March 26,2012 weighing around 143lbs. and by April 2,2012 I weighed in at 122lbs.

April 3,2012 Defendant C. Sermo conducted a face to face interview. This interview only lasted three to five minutes. In the interview I suggested that it would be appropriate for the Plaintiff to be placed in the Residential Treatment Program. The Defendant informed me that neither my diagnosis nor my behaviors met the criteria for RTP. I conveyed to the Defendant that I had just spent the last nine months in the Residential Treatment Program, but the Defendant no longer wanted to engage in this conversation. I then requested that the Defendant submit a referral in to transfer me to the Crisis Stabilization Program where they could conduct a thorough psychiatric evaluation and determine the appropriate treatment for me. The Defendant Stated "Idon't feel like doing all of that paperwork." The Defendant then ended the interview.

On April 4,2012 I went before the Hearing Officer in regards to the threatening behavior written by Defendant Donna Beauvais. Pursuant to the Michigan Dep't of Corrections Policy Directive 04.06.182 a prisoner that has a substantial disorder of thought or mood, which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life, cannot be sanctioned to detention. Defendant C. Sermo deliberately completed a Misconduct Sanction Screening form in a way that would allow the Hearing Officer to impose a sanction upon me. I was found guilty of the threatening behavior and was sanctioned to the maximum of 30 days detention.

From April 4,2012 to April 9,2012 I began to exhibit self-injurious behaviors. I deprived myself of all food and liquids.

April 9,2012 I attempted suicide by hanging myself inside my cell. Staff rushed into my cell and restrained me. They stripped me completely naked and escorted me to the shower in handcuffs. Staff refused to call health services and no medical treatment was provided.

Staff removed all property from my cell, including my matress. I was placed in my cell on observation status where the response team applied soft restraints to my hands and feet. I was forced to lay on the cold, hard concrete for hours. I began to bang my head against the wall causing injuries. There was blood coming from the back of my head and I experienced a temporary loss of consciousness. Moments later I removed the soft restraints. Staff cuffed me up and placed me back in the shower. Staff informed me that I was going to be placed on top of the bed. The matress was placed on the bed where the response team escorted me to my cell. The response team placed me in an unauthorized position in four-point restraints on top of the bed. After complaining to the nurse that the restraints

2

were applied too tight and that I started to lose feeling and circulation in my left hand, Sgt. Cox and the response team came back into my cell and placed me in the five-point restraints on top of the bed.

3rd shift, Shift Command, John Doe #1 came into my cell after 10:00pm to check my restraints, but did not offer me a break, restroom or an opportunity to get a drink of water.

The Supervisor, John Doe #2 came into my cell after 12:00am to check the restraints. I asked John Doe #2 if I could be released from the bed to use the restroom and he stated "hold it!" I then asked John Doe #2 when I was suppose to come off the bed and he stated "you're gonna stay just like that until your mental illness goes away." John Doe #2 then exited the cell.

Around 1:30am and 2:00am I had been screaming for the staff to contact the supervisor to release me from the bed to use the restroom, but Plaintiff was ignored. Their deliberate actions caused Plaintiff to urinate and defecate on himself. On several occasions I complained to staff that I had used the restroom on myself and was told that the next shift would take care of it. From approximately 2:00am to 9:00am Plaintiff was forced to lay in his urine and feces, completely naked in the extremely cold cell. At no time did the officials enter my cell with the hand-held video-audio recorder to offer me a break, restroom or an opportunity to get a drink of water. After 1:00am until 7:00am no official entered my cell at any time. There is a camera inside the observation cell and with the production of this video tape will bring forth the truth of these allegations by the Plaintiff.

Approximately 8:00am and 8:30am Defendant's C. Sermo and Donna Beauvais entered my cell and told me that I was being sent to a Crisis Stabilization Program.

Approximately 10:00am I was released from the bed and placed back in soft restraints until about 5:00pm when I was transferred to the CSP. Plaintiff spent Approximately 25 hours in restraints. Plaintiff is a mentally ill prisoner, at the particular time was noncombative and had only exhibited self-injurious behaviors. Their actions were deliberate and excessive.

Plaintiff was treated at the CSP where I was placed back on my psychotropic medications. I was housed at WCC from April 10,2012 until April 18,2012 where I was transferred back to Macomb Correctional Facility. Upon arrival I was placed in general population.

3

EXHAUSTION OF LEGAL REMEDIES


    Plaintiff had submitted complaints and Health Care Request
forms to mental health requesting urgent assistence to no avail.
Plaintiff is currently using the prisoner grievance procedure
available at Macomb Correctional Facility. On 4/3/12, 4/4/12,
4/6/12, and 4/19/12 Plaintiff presented the facts relating to this
complaint on several grievances. Plaintiff will present this
documentation later in this action.

III. STATEMENT OF CLAIMS

    The defendant's actions violated Plaintiff's rights under the
Americans with Disabilities Act (ADA) found at 42 U.S.C. §12101-
12213, retaliation for protected speech and cruel and unusal
punishment under the First and Eighth Amendment to the United
States Constitution.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment granting Plaintiff:
1. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

2. Nominal damages against each defendant.

3. Compensatory damages against each defendant.

4. Punitive damages against each defendant.

5. The pursuit of discovery and interrogatories.

6. A jury trial on all issues triable by jury.

7. Plaintiff's costs in this suit.

8. Any additional relief this court deems just, proper, and equitable.


## VERIFICATION

I certify under penalty of perjury that the foregoing is true and correct.

Executed at New Haven, Michigan on April 30,2012

Randy Berkshire



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
THEODORE LEVIN UNITED STATES COURTHOUSE
231 West Lafayette Blvd Room 564
Detroit, MI 48226

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| **Case No.** 12-12038 | **Judge:** Arthur J. Tarnow | **Magistrate Judge:** Michael Hluchaniuk |

| **Name of 1ˢᵗ Listed Plaintiff/Petitioner:** | **Name of 1ˢᵗ Listed Defendant/Respondent:** |
|---|---|
| Randy Berkshire | Debra Dahl, et al |

**Inmate Number:** 371645

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

Macomb Correctional Facility

34625 26 Mile Road
New Haven, MI 48048
MACOMB COUNTY

**BASIS OF JURISDICTION**
☐ 2 U.S. Government Defendant
☒ 3 Federal Question

**NATURE OF SUIT**
☐ 530 Habeas Corpus
☐ 540 Mandamus
☐ 550 Civil Rights
☒ 555 Prison Conditions

**ORIGIN**
☒ 1 Original Proceeding
☐ 5 Transferred from Another District Court
☐ Other:

**FEE STATUS**
☒ IFP *In Forma Pauperis*
☐ PD Paid

---

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ **Yes**        ☐ **No**
   ➢ **If yes, give the following information:**
   Court: _____
   Case No: _____
   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ **Yes**        ☐ **No**
   ➢ **If yes, give the following information:**
   Court: _____
   Case No: _____
   Judge: _____