MIED (Rev. 03/11) Prisoner Civil Rights Complaint

| Case Number | Judge |
|---|---|
| | |

**Case:2:12-cv-12038**
**Judge: Tarnow, Arthur J.**
**MJ: Hluchaniuk, Michael J.**

**FILED**
FEB 15 2013
CLERK'S OFFICE-DETROIT
U.S. DISTRICT COURT

## PRISONER CIVIL RIGHTS COMPLAINT

*This form is for use by state prisoners filing under 42 U.S.C. § 1983 and federal prisoners filing pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

### Plaintiff's Information

| Name | Randy Berkshire | | Prisoner No. | 371645 |
|---|---|---|---|---|

| Place of Confinement | | |
|---|---|---|
| Ionia Maximum Correctional Facility | | |

| Street | City | State | Zip Code |
|---|---|---|---|
| 1576 W. Bluewater Hwy | Ionia | MI | 48846 |

| Are there additional plaintiffs? | ☐ Yes | ☒ No |
|---|---|---|

*If yes, any additional plaintiffs to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide names, prisoner numbers and addresses for all plaintiffs.*

### Defendant's Information

| Name | Debra Dahl | Position | Unit Chief |
|---|---|---|---|

| Street/P.O. Box | City | State | Zip Code |
|---|---|---|---|
| 34625 26 Mile Road | New Haven | MI | 48048 |

| Are you suing this defendant in his/her: | ☐ Personal Capacity | ☐ Official Capacity | ☒ Both Capacities |
|---|---|---|---|

| Are you suing more than one defendant? | ☒ Yes | ☐ No |
|---|---|---|

*If yes, any additional defendants to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.*

1

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

## I. PREVIOUS LAWSUITS

Have you filed any other lawsuits in state or federal court relating to your imprisonment?

☒ Yes          ☐ No

If "Yes," complete the following section. If "No," proceed to Part II.

Please list all prior civil actions or appeals that you have filed in federal court while you have been incarcerated.

| | |
|---|---|
| Docket or Case Number: | 1:10-cv-942 |
| Name of Court: | United States District Court/Western District |
| Parties (Caption or Name of Case): | Randy Berkshire v. Cindi Curtin, et al., |
| Disposition: | Open |

| | |
|---|---|
| Docket or Case Number: | 2:12-cv-12038 |
| Name of Court: | United States District Court/Eastern District |
| Parties (Caption or Name of Case): | Randy Berkshire v. Debra Dahl, et al., |
| Disposition: | Dismissed without prejudice pending exhaustion |

| | |
|---|---|
| Docket or Case Number: | |
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

***Any additional civil actions should be listed on a separate sheet of 8½" x11" paper and securely attached to the back of this complaint.***

## DEFENDANTS

1. Defendant Debra Dahl was the unit chief, legally responsible for the operation of efficient and effective management, and for the welfare of all inmates in the Residential Treatment Program.

However, Defendant Dahl is no longer employed with MDOC, but her current address is being retained by the U.S. Marshal's for the purpose of effectuating service.

2. Defendant Donna Beauvais was the unit chief, legally responsible for the operation of efficient and effective management, and for the welfare of all inmates assigned to Outpatient Mental Health.

3. Defendant Christopher Sermo is a psychologist with Outpatient Mental Health who is trained and experienced in the areas of mental illness or mental retardation and is licensed or certified by the State of Michigan to practice within the scope of his professional training.

4. Defendant Vasilis Pozios is a psychiatrist with the Outpatient Mental Health who is trained and experienced in the areas of mental illnes or mental retardation and is licensed or certified by the State of Michigan to practice within the scope of his professional training.

5. Lieutenant John Doe is assigned to 3rd Shift and was responsible for overseeing Plaintiff while he was placed on Top of Bed Restraints.

6. Sergeant John Doe is assigned to 3rd Shift and was responsible for conducting frequent checks on Plaintiff while he was placed on Top of Bed Restraints and was required to afford Plaintiff frequent opportunities to a break, or to get a drink of water or to use the restroom.

7. Each Defendant is sued individually and in his/her official capacity. At all times mentioned in this Complaint, each Defendant acted under color

3

of State law.

      8. Defendant's 2 through 6 is employed with MDOC and is located at

the following address:

Macomb Correctional Facility
34625 26 Mile Road
New Haven, Michigan 48048

4

## II. STATEMENT OF FACTS

Plaintiff was sent to Macomb Correctional Facility ("MRF")  to be placed in the Residential Treatment Program ("RTP") on July 1, 2011 from a Crisis Stabilization Program ("CSP"). It was determined that Plaintiff suffered from a substantial disorder of thought or mood, which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.

2. March of 2012 Plaintiff was elected as the Housing Unit Representive. Pursuant to MDOC's Policy Directive 04.01.150, Plaintiff's duties served solely in an advisory capacity to the administration. Plaintiff addressed the complaints and concerns affecting a class of prisoners. On March 19, 2012 Plaintiff submitted a three page complaint to RUM Wilson and Defendant Dahl, addressing several deprivations amounting to constitutional deprivations On March 23, 2012 Plaintiff was discharged out of RTP in retaliation for the exercise of his right to access both administrative and judicial forums for the purpose of seeking redress of grievances against the officers, secured under the First Amendment.

3. Plaintiff was discharged from RTP without a mental health assessment, diagnostic evaluation and treatment or disposition planning. Plaintiff was transferred to a lower level of care where it offered less privileges, less opportunities for out of cell movement, less groups, services and rehabilitation programs.

4. On March 26, 2012 Plaintiff's Business Education Technology teacher Ms. D. Jones conveyed to Defendant Beauvais that Plaintiff appeared to be mentally unstable. After expressing homicidal ideations to Defendant Beauvais, she issued Plaintiff a Class 1 misconduct for threatening behavior and had him placed in segregation. Plaintiff had not been offered his psychotropic medications and shortly thereafter, began to exhibit self-injurious behaviors. Plaintiff deprived himself of all food and liquids.

5. On March 27, 2012 Plaintiff was found unresponsive inside of his cell by RUO Tripp. Emergency medical treatment was provided and Plaintiff was rushed to the hospital via ambulance where he was admitted until March 29, 2012. Plaintiff was transferred back to MRF and placed back in a temporary segregation cell. Pursuant to Policy Directive 04.06.115, Plaintiff's self-injurious behaviors warranted a placement in an observation cell.

5

On March 29, 2012 Plaintiff continued to exhibit self-injurious behaviors, depriving himself of all food and liquids.

7. On March 30, 2012 it was noted in the Health Care Log Book and Defendant Pozios was informed that Plaintiff's psychotropic medications had expired. Defendant Pozios had deliberately refused to renew the order for those medications. The psychotropic medications prescribed to Plaintiff are used to help him rehabilitate his severe mental disorders, including but not limited to suicidal attempts.

8. On March 31, 2012 medical staff were forced into Plaintiff's cell to conduct a medical assessment of his health and safety due to the continuation of self-injurious behaviors. Registered Nurse ("RN") Janet Quiles reffered Plaintiff for evaluation regarding his self-injurious behaviors.

9. On April 1, 2012 staff physically escorted Plaintiff to health services where medical staff provided Plaintiff a thorough evaluation due to the continuation of self-injurious behaviors. After the evaluation was completed, Lieutenant Wehberg ordered staff to place Plaintiff in an observation cell.     10. On April 2, 2012 staff rushed into Plaintiff's cell to find him unresponsive lying in his urine and feces. Staffed forced Plaintiff into a wheelchair and escorted Plaintiff to health services where a series of medical tests were conducted. Plaintiff entered segregation on March 26, 2012 weighing around 143lbs. and by April 2, 2012 Plaintiff weighed in at 128lbs.

11. April 3, 2012 Defendant Sermo conducted a face-to-face interview with Plaintiff lasting three to five minutes. In that interview Plaintiff suggested that it would be appropriate for him to return to RTP. The Defendant informed Plaintiff that neither his diagnosis or behaviors met the criteria for the Residential Treatment Program. Plaintiff conveyed to the Defendant

that he had just recently spent the last 9 months in RTP, but the Defendant
no longer wanted to engage in this conversation. Plaintiff then requested
that the Defendant submit a referral in to transfer him to the Crisis
Stabilization Program where they could conduct a thorough psychriatric
evaluation to determine the appropriate treatment for him. The Defendant
stated "I don't feel like doing all of that paperwork." The Defendant then
ended the interview.

12. On April 4, 2012 Plaintiff went before the hearing officer in
regards to the Threatening Behavior written by Defendant Beavauis. Pursuant
to Policy Directive 04.06.182 a prisoner that has a substantial disorder
of thought or mood, which significantly impairs judgment, behavior, capacity
to recognize reality, or ability to cope with the ordinary demands of life
cannot be placed in detention. Defendant Sermo deliberately completed a
Misconduct Sanction Screening form in a way that would allow the hearing
officer to impose a sanction of detention on him. Plaintiff was found guilty
of the misconduct and was sanctioned to the maximum of 30 days detention.

13. From April 4, 2012 to April 9, 2012 Plaintiff began to exhibit
self-injurious behaviors, depriving himself of all food and liquids.

14. April 9, 2012 Plaintiff attempted suicide by hanging himself inside
his cell. Staff rushed into Plaintiff's cell and restrained him. They stripped
him completely naked and escorted Plaintiff to the shower in handcuffs. Staff
refused to call health services and no medical treatment was provided.

15. Staff removed all property from Plaintiff's cell, including his
mattress. Plaintiff was placed on observation status where the response team
applied soft-restraints to his hands and feet. Plaintiff was forced to lay
on the cold, hard concrete for hours. Plaintiff began to bang his head against

the wall causing injuries. There was blood coming from the back of Plaintiff's head and he experienced a temporary loss of consciousness. Moments later Plaintiff removed the soft-restraints. Staff placed the Plaintiff in handcuffs and placed him in the shower. Staffed informed him that he was going to be placed in Top of Bed Restraints ("TOBR"). The mattress was placed on the bed where the response team escorted Plaintiff to his cell. The response team placed Plaintiff in an unauthorized position in four-point restraints on the top of his bed causing severe physical pain. After screaming and complaining to the nurse that the restraints were applied too tight and that he started to lose feeling and circulation in his left hand, Sergeant Cox and the response team came back into Plaintiff's cell and placed him in the five-point restraints on top of his bed.

16. 3rd Shift, Lieutenant John Doe #1 came into Plaintiff's cell after 10:00pm to check his restraints, but did not offer him a break, or an opportunity to get a drink of water or to use the restroom.

17. Sergeant John Doe #2 came into Plaintiff's cell after 12:00am to check the restraints. Plaintiff asked Sergeant John Doe if he could be released from the bed to use the restroom and he stated "hold it!" Plaintiff then asked him when Plaintiff was suppose to come off of the bed and he stated "you're gonna stay just like that until your mental illness goes away." Sergeant John Doe then exited the cell.

18. Around 1:30am and 2:00am Plaintiff had been screaming for the staff to contact the supervisor to release him from the bed to use the restroom, but Plaintiff was ignored. Their deliberate actions caused Plaintiff to urinate and defecate on himself. On several occasions Plaintiff complained to staff that he had used the restroom on himself and was told that the next shift would take care of it. From approximately 2:00am to 9:00am Plaintiff was forced to lay in his urine and feces, completely naked in the extremely

cold cell.

19. At no time did the officials enter Plaintiff's cell with the hand-held video/audio recorder to offer him a break, or an opportunity to get a drink of water or to use the restroom. After 1:00a, to 7:00am no offical entered Plaintiff's cell at any time. There is a camera inside the observation cell, cell 21 where Plaintiff resided, and with the production of this video will bring forth the truth of these allegations by the Plaintiff.

20. After 7:00am Lieutenant Wehberg entered Plaintiff's cell to find him completely naked lying in his urine and feces. A suicide blanket was placed on top of Plaintiff and refused Plaintiff a break, an opportunity to get a drink of water or to use the restroom, and was denied an opportunity to cleanse the urine and feces off of him.

21. Sometime around 9:00am Sergeant Austin, Correctional Officers Logan and Groves entered Plaintiff's cell. Plaintiff informed Sergeant Austin of the abuse he had been subjected to as described above and Plaintiff was released from TOBR to receive a drink of water and to shower and cleanse the urine and feces off of him. Sergeant Austin had a segregation porter clean and sanitize Plaintiff's mattress before he was placed back on TOBR.

22. Plaintiff was placed on TOBR for approximately thirteen hours or more and had caused him severe physical pain and debilitating mental and emotional injuries being subjected to the deprivation of movement and to the abuse at the hands of prison officials.

23. Defendant's Sermo and Beauvais entered Plaintiff's cell and told him that he was being transferred to CSP.

24. Around 10:00am Plaintiff was released from TOBR and placed back in soft-restraints until about 5:00pm when he was transferred to CSP.

25. Plaintiff spent approximately 25 hours in restraints. Plaintiff

is a mentally ill prisoner and at that particular time was noncombative and had only exhibited self-injurious behaviors. The misuse of restraints was deliberately indifferent, malicious and sadistic, a deprivation of Plaintiff's right to bodily liberty, and atypical and significant hardship.

26. Plaintiff was treated at CSP where he had been placed back on his psychotropic medications. Plaintiff was housed at WCC from April 10, 2012 to April 18, 2012 where he was transferred back to MRF and placed in the general population.

## II. EXHAUSTION OF LEGAL REMEDIES

27. Plaintiff initiated the grievance process and has completed exhaustion regarding all claims to all Defendant's arising out of this Complaint.

### III. STATEMENT OF CLAIMS

28. The Defendants' actions violated Plaintiff's rights for the retaliation of protected speech grounded in the First Amendment, and deliberate indifference, malicious and sadistic intent to use force, deprivation of the right of bodily liberty, and atypical and significant hardship grounded in the Eighth Amendment and Fourteenth Amendment to the United States Constitution.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will enter judgment granting Plaintiff:

29. A Declaratory Judgment that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

30. Compensatory damages, jointly in the amount of $25,000.

31. Punitive damages, jointly in the amount of $150,000.

32. The full opportunity to conduct discovery.

33. That Plaintiff will be granted limited correspondence with his witnesses after summary judgment.

34. A jury trial on all issues triable by a jury.

35. Plaintiff's costs in this suit.

36. Injunctive Relief requiring Plaintiff to be returned to the Residential Treatment Program at Macomb Correctional Facility for further mental health evaluation(s) and treatment.

37. Any additional relief that this Court deems just, proper and equitable.

## VERIFICATION

I, Randy Berkshire, being duly sworn, depose and certifies that the information described in this Complaint are true and correct, and that I, Plaintiff Randy Berkshire certifies that these facts are based on his personal knowledge and that he is competent to testify to those facts described herein.

_Randy E. Berkshire_

Randy E. Berkshire

Sworn and subscribed to
before me, a Notary Public
this day _5th_ of _February_ 2013

_Joseph A. Novak_

    Notary Public ~ MICHIGAN
My Commission Expires: _2/8/2015_
MACOMB  COUNTY, ACTIVE
IN  IONIA  COUNTY



14

Randy Berkshire  371645
Ionia Maximum Correctional Facility
1576 W. Bluewater Hwy.
Ionia, MI 48846

Prisoner

R E C E I V E D
FEB 1 5 2013
CLERK'S OFFICE
DETROIT

United States District Court
For the Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd. - Rm 564
Detroit, MI 48226



UNITED STATES POSTAL
$01.52°
02 1R
0006560838
MAILED FROM ZIP CODE 48846
FEB 12 2013