UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE,                                    Case No. 12-12038

           Plaintiff,                          Arthur J. Tarnow

v.                                                 United States District Judge

DEBRA DAHL, *et al.*,                              Michael Hluchaniuk
                                                   United States Magistrate Judge

           Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS FOR SUMMARY JUDGMENT (Dkt. 110, 112)**

## I.  PROCEDURAL HISTORY

Plaintiff filed this pro se prisoner civil rights lawsuit on May 7, 2012.  (Dkt. 1).  On June 12, 2012, this matter was referred to the undersigned for all pretrial proceedings.  (Dkt. 9).  On January 8, 2014, defendants Beauvais, Dahl, LeDuc, and Sermo filed a motion for summary judgment.  (Dkt. 110).  Plaintiff filed a response on January 17, 2014.  (Dkt. 115).  On January 13, 2014, defendant Pozios filed a motion for summary judgment.  (Dkt. 112).  Plaintiff filed a response to this motion on January 17, 2014.  (Dkt. 115).  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the motion for summary judgment filed by defendants Beauvais, Dahl, LeDuc, and

Sermo be **GRANTED** and that defendant Pozios' motion for summary judgment be **DENIED**.

## II.    FACTUAL BACKGROUND

Plaintiff originally filed his complaint on May 7, 2012.  (Dkt. 1).
Conceding that he failed to exhaust his administrative remedies before initiating this action, plaintiff moved for dismissal without prejudice.  (Dkt. 51).  This Court dismissed the case without prejudice.  (Dkt. 54).  Plaintiff then filed a motion to reinstate his case, as well as a motion to vacate the order dismissing his case. (Dkt. 59, 61).  The Court granted plaintiff's motion to reinstate his case and granted his motion to file an amended complaint.  (Dkt. 62).  Plaintiff filed an amended complaint on August 15, 2013.  (Dkt. 70).  Defendants Dahl, Beauvais, and Sermo filed a motion to dismiss.  (Dkt. 81).  Plaintiff responded by seeking to amend his complaint yet again.  (Dkt. 84).  This Court granted plaintiff leave to amend and terminated as moot the pending dispositive motion.  (Dkt. 96).

Defendant LeDuc was subsequently served and filed an appearance. (Dkt. 98).  Plaintiff then filed his second amended complaint.  (Dkt. 101).  In his second amended complaint, plaintiff claims that defendant Dahl discharged him from the Residential Treatment Program (RTP), in alleged retaliation for complaints that plaintiff had made.  (Dkt. 101, ¶¶ 2-3).  Plaintiff was elected as a Housing Unit Representative (HUR) in March 2012.  (Dkt. 101, ¶ 2).  On March 19, 2012,

Report and Recommendation
Motions for Summary Judgment
*Berkshire v. Dahl*; Case No. 12-12038

plaintiff submitted a three page complaint to RUM Wilson and defendant Dahl addressing several concerns on behalf of other prisoners in the RTP amounting to possible constitutional violations.  *Id*.  On March 21, 2012, plaintiff alleges that Dahl changed his GAF score to 53, intentionally downgraded all of his diagnoses by March 22, 2012, and was responsible for his retaliatory discharge from RTP. *Id*.  According to plaintiff, Dahl discharged him from RTP without a mental health assessment, diagnostic evaluation and treatment or disposition planning in according with applicable operating procedures.  Plaintiff was then transferred to a lower level of care where fewer privileges were offered and more restrictions imposed.  (Dkt. 101, ¶ 3).

Plaintiff asserts that defendant Beauvais issued a misconduct ticket after plaintiff expressed homicidal ideation.  *Id*. at ¶ 4.  Plaintiff next claims that on April 3, 2012, defendant Sermo conducted a face-to-face interview that lasted only five minutes.  Appropriate treatment was discussed.  *Id*. at ¶ 11.  The next day, plaintiff had a hearing on the ticket written by defendant Beauvais.  Plaintiff claims that defendant Sermo completed a Misconduct Sanction Screening form, which enabled the hearing officer to impose the maximum sanction.  Plaintiff was found guilty.  *Id*. at ¶ 12.

Next, while he was in top-of-bed restraints, plaintiff claims that defendant LeDuc came to check on him, but refused to offer a break or water.  (Dkt. 101,

Report and Recommendation
Motions for Summary Judgment
*Berkshire v. Dahl*; Case No. 12-12038

¶ 16). Plaintiff states that Defendants Sermo and Beauvais entered his cell at some point and told plaintiff that he was being transferred to the Crisis Stabilization Program (CSP). *Id*. at ¶ 23. Plaintiff asserts that defendants Beauvais and Sermo (as well as defendant Pozios) were subjectively aware that he was at risk of suicide prior to April 9, 2012, but failed to take appropriate measures, resulting in plaintiff's attempted suicide. *Id*. at ¶ 26. In his "Statement of Claim," plaintiff alleges that defendant Dahl's actions constituted First Amendment retaliation; that defendant Sermo's and Beauvais's actions constituted deliberate indifference in violation of the Eighth Amendment; and that defendant LeDuc violated plaintiff's Eighth and Fourteenth Amendment rights. *Id*. at ¶¶ 28-30.

Debra Dahl was the Unit Chief of the Residential Treatment Program at the Macomb Correctional Facility. (Dkt. 110, Ex. 1, Affidavit of Debra Dahl, ¶ 1). According to Dahl, plaintiff was not discharged from RTP because he made complaints. Rather, plaintiff was discharged because he was no longer in need of RTP services and was determined to be able to function in Level IV General Population. *Id*. at ¶ 5. The decision was made after plaintiff's progress was discussed at a case management meeting. *Id*. at ¶ 4.

Donna Beauvais is currently the Unit Chief of the RTP at Macomb, but during the time of plaintiff's claims she was the Unit Chief of the Outpatient Mental Health Program at Macomb. (Dkt. 110, Ex. 2, Affidavit of Donna

Beauvais, ¶ 1).  On March 26, 2012, defendant Beauvais was approached by a teacher who expressed concern that plaintiff appeared agitated.  *Id*. at ¶ 3.  She met with plaintiff, who stated that he did not know that he was going to be discharged from RTP and that he could not lock in general population.  *Id*. at ¶ 4.  Plaintiff indicated that he could not get along with his bunk mate.  *Id*. at ¶ 5.  After defendant Beauvais encouraged plaintiff to return to his housing unit, plaintiff stated that if a certain officer bothered him, then he was going to "slice his throat." *Id*. at ¶ 6.  Defendant Beauvais contacted the control center about the threat and then wrote a misconduct ticket.  *Id*. at ¶ 7.  Defendant Beauvais then assigned defendant Christopher Sermo as plaintiff's case manager to manage plaintiff's psychological treatment.  *Id*. at ¶ 9.

Christopher Sermo is a psychologist at Macomb.  (Dkt. 110, Ex. 3, Affidavit of Christopher Sermo, ¶ 1).  After plaintiff was put in segregation based on the ticket written by defendant Beauvais, he was put on defendant Sermo's caseload. *Id*. at ¶ 3.  Defendant Sermo reviewed plaintiff's medical record and informed the psychiatrist that plaintiff's medication order was about to expire.  *Id*. at ¶ 4. Defendant Sermo, along with Dr. Pozios (the psychiatrist), attempted to interview plaintiff on March 30, 2012, but plaintiff refused to speak with them.  *Id*. at ¶ 6.  A few days later, defendant Sermo learned that plaintiff had been placed in an observation cell after stating that he was on a hunger strike.  Plaintiff refused to

speak with defendant Sermo.

Plaintiff continued to be monitored by staff as a precaution, even though he had not expressed being suicidal. *Id*. at ¶ 7. After it was reported that plaintiff ate, the management plan was adjusted and plaintiff finally agreed to speak with defendant Sermo. *Id*. at ¶ 8. Plaintiff's psychotropic medications were renewed. *Id*. at ¶ 9. A few days later when defendant Sermo went to evaluate plaintiff, an officer reported that plaintiff had been found with a noose in his cell and was banging his head against the wall. Plaintiff was moved to an observation cell and placed in soft restraints. *Id*. at ¶ 10. Defendant Sermo asked about what had happened. Plaintiff indicated that he had not been taking his medications. *Id*. at ¶ 11. Plaintiff was placed in the Crisis Stabilization Program for further evaluation. *Id*. at ¶ 12. Plaintiff was later transferred to the Outpatient Program, where he was seen by other staff. *Id*. at ¶ 13. Plaintiff was then cooperative and compliant with his medications. *Id*. at ¶ 14. Defendant Sermo had no further contact after being notified of this lawsuit. *Id*. at ¶ 15.

Robert LeDuc is currently a Captain, but was a Lieutenant at the time of the allegations. (Dkt. 110, Ex. 4, Affidavit of Robert LeDuc, ¶ 1). Defendant LeDuc and Nurse Quiles checked plaintiff's restraints on April 9, 2012. Plaintiff was offered a restroom break and water, but he refused. *Id*. at ¶ 3. During Defendant LeDuc's shift, plaintiff was checked four times. *Id*. at ¶ 7. Plaintiff was removed

from top-of-bed restraints the morning of April 10, 2012, at which time he was given the opportunity to use a shower and restroom, and to drink water. *Id*. at ¶ 6.

Defendant Dr. Pozios was scheduled to meet with plaintiff on March 30 for a psychiatric evaluation and medication renewal. (Dkt. 112, Ex. F). However, plaintiff refused to come out of his cell. *Id*. When Dr. Pozios and the case manager attempted to assess plaintiff at his cell, he refused to respond to questions. *Id*. Dr. Pozios's note from that encounter states as follows:

> Mr. Berkshire's case manager and I attempted to meet with Mr. Berkshire but he refused. I was informed that Mr. Berkshire's medication orders are due to end today, but that he has been refusing his psychotropic medications. Because I could not evaluate Mr. Berkshire and review his medications, I elected not to renew his medications. I will attempt to meet with Mr. Berkshire again in the next couple of weeks.

(Dkt. 112, Ex. H). On March 31, the nursing staff wrote that plaintiff had stayed in bed since his hospital admission. (Dkt. 112, Ex. I). He claimed he could not remember when he last had something to eat or drink. *Id*. However, the nurse's physical evaluation revealed no signs of dehydration. *Id*. Plaintiff appeared alert and oriented and denied that he needed any help. *Id*.

Due to his refusal to eat, plaintiff was transferred to an observation cell and asked to notify health care if he had any concerns or issues. (Dkt. 112, Ex. J). He continued to refuse food, fluids and medications on April 1, 2012. (Dkt. 112, Ex.

K).  He signed a form acknowledging that he was refusing to eat, and that he was

not taking his medications because he "doesn't need meds."  (Dkt. 112, Ex. K, p.

2).  He remained under close watch on April 2, 2012, and continued to refuse to

speak to his case manager and the psychiatrist.  (Dkt. 112, Ex. L).  He continued to

refuse his medications.  (Dkt. 112, Ex. M).  Finally, on the evening of April 3,

2012, plaintiff ended his self-imposed hunger strike.  (Dkt. 112, Ex. N).  However,

he continued to refuse medications.  (Dkt. 112, Ex. O).

On April 5, plaintiff told his nurse that his medications were not being

renewed until he had a psychiatric evaluation.  (Dkt. 112, Ex. P).  He reported that

he was upset because he had been informed that "his psych problems are no longer

valid to support meds plus noncompliant with meds."  (Dkt. 112, Ex. Q).  He was

scheduled to be seen by the psychiatrist on April 6.  *Id*.  However, due to his

continued noncompliance with health care personnel, Dr. Pozios was not able to

evaluate him.  (Dkt. 112, Ex. R).  His medications were renewed for a month

without refills, and he was scheduled for a medication review on April 9.  *Id*.

Plaintiff agreed he would take his medications and "take one day at a time."  (Dkt.

112, Ex. S).  Despite his promise, plaintiff continued to refuse to take his

medications.

On April 9, he was evaluated by Dr. Pozios as previously scheduled.  Earlier

in the day, he had been found with a makeshift noose, although it was not clear

that he had actually had the noose around his neck.  (Dkt. 112, Ex. T).  Due to his

threats of self-harm, plaintiff was transferred to an observation cell and placed in

soft restraints.  *Id*.  During the course of Dr. Pozios's April 9 evaluation, plaintiff

stated that he had been refusing his medications since March 26.  *Id*.  When Dr.

Pozios attempted to question him further, he was uncooperative and refused an

offer to discuss alternative medications.  *Id*.

The only factual allegation in the complaint against Dr. Pozios is a

purported failure to renew his medications on March 30, 2012.  The pertinent

portion of the Complaint states as follows:

> On March 30, 2012 it was noted in the Health Care
> logbook and Defendant Pozios was informed that
> Plaintiffs psychotropic medications had expired.
> Defendant Pozios had deliberately refused to renew the
> order for those medications. The psychotropic
> medications prescribed to Plaintiff, are used to help him
> rehabilitate his severe mental disorders, including
> suicidal attempts.

(Dkt. 1, ¶ 7, Pg ID 1191).  Plaintiff claims that as a result of the "deprivation" of

medications, his mental health deteriorated, and he attempted suicide.

## III.   ANALYSIS AND CONCLUSIONS

A.   <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). Once the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed.R.Civ.P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces

Report and Recommendation
Motions for Summary Judgment
*Berkshire v. Dahl*; Case No. 12-12038

the nonmoving party to present evidence sufficient to create a genuine issue of fact

for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A

mere scintilla of evidence is insufficient; 'there must be evidence on which a jury

could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*,

555 F.3d 543, 549 (6th Cir. 2009), quoting *Anderson*, 477 U.S. at 252; *see also*

*Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby*

*Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without

the burden of proof needs only show that the opponent cannot sustain his burden

at trial. "But where the moving party has the burden–the plaintiff on a claim for

relief or the defendant on an affirmative defense–his showing must be sufficient

for the court to hold that no reasonable trier of fact could find other than for the

moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986),

quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining*

*Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984). The Court of

Appeals has repeatedly emphasized that the party with the burden of proof faces "a

substantially higher hurdle" and "'must show that the record contains evidence

satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561, quoting

11 JAMES WILLIAM MOORE, ET. AL. MOORE'S FEDERAL PRACTICE § 56.13[1], at

56-138 (3d ed. 2000); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012);

*Cockrel*, 270 F.3d at 1056.  Accordingly, a summary judgment in favor of the

party with the burden of persuasion "is inappropriate when the evidence is

susceptible of different interpretations or inferences by the trier of fact." *Hunt v.*

*Cromartie*, 526 U.S. 541, 553 (1999).

      B.    <u>Defendant Dahl - First Amendment Retaliation</u>

      Regarding defendant Dahl, plaintiff's claim is for First Amendment

retaliation.  (Dk. 101, ¶ 28).  Plaintiff claims that his discharge from RTP was

retaliatory.  Even assuming that plaintiff was engaged in protected conduct,

defendant Dahl argues that plaintiff has failed to establish a claim.  According to

Dahl, plaintiff's claim fails primarily on the causation element of his retaliation

claim.  "Under the causation element of a prisoner's prima facie case for

retaliation, the subjective motivation of the decisionmaker is at issue – that is, the

plaintiff must show that the decision was motivated, at least in part, by the

plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.

2001).  Here, Dahl has testified that plaintiff was discharged because of his

progress and that he no longer required RTP.  According to Dahl, plaintiff was not

discharged because he made complaints.  Because plaintiff has made nothing more

than a conclusory allegation of retaliation and because defendant Dahl has clearly

expressed a nonretaliatory reason for plaintiff's discharge, Dahl argues that summary judgment should be granted in his favor.

Plaintiff argues that Dahl set in motion a retaliatory transfer with the foreseeable consequences that the transfer would terminate his position as a Housing Unit Representative (HUR) and that the transfer would result in more restrictions and fewer privileges. According to plaintiff, on March 19, 2012, he submitted to Dahl a three page complaint of concerns he was raising as the HUR. Plaintiff contends that, by March 22, 2012, Dahl had intentionally downgraded all of plaintiff's mental health diagnoses and manipulated his Global Assessment of Functioning (GAF) score so that plaintiff was transferred to a separate location, which offered a lower level of mental health care, with fewer privileges and more restrictions. According to plaintiff, the temporal proximity of these events permit an inference that Dahl was motivated by a desire to punish plaintiff. Plaintiff argues that Dahl cannot show she would have taken the same action regardless of the protected activity because if plaintiff had not engaged in the protected activity, he would have remained diagnosed with PTSD, major depression, and intermittent explosive disorder, and his GAF would have remained below 51, requiring him to stay in the RTP.

"Protected speech does not cause an adverse action in the traditional sense because protected speech does not act, but we say protected speech causes an

adverse action if the speech motivates an individual actor to take acts that then proximately cause an adverse action." *King v. Zamiara*, 680 F.3d 686, 694-95 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 985 (U.S. 2013).  Subjective motivation appropriately enters the picture on a retaliation claim because the concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment.  *King*, 680 F.3d at 695, citing *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir.1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal quotation marks omitted).  Thus, the court in *King* explained that causation in retaliatory claims may really be considered a two-part inquiry: a plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005), but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386.

 "Causation in the constitutional sense is no different from causation in the common law sense." *King*, 680 F.3d at 695, quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005).  An officer may therefore be liable under § 1983 "'for the natural consequences of his actions.'"  *Id*., quoting *Monroe*

*v. Pape*, 365 U.S. 167, 187 (1961).  This includes liability for acts giving rise to the ultimate harm, even if the harm is executed by someone else.  *King*, 680 F.3d at 695, citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) ("Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable."), *cert. denied*, 555 U.S. 813 (2008); *see also Paige v. Coyner*, 614 F.3d 273, 281-82 (6th Cir. 2010) (holding state actor could be liable for retaliation for making false statements to plaintiff's employer causing her to be fired); *Sykes v. Anderson*, 625 F.3d 294, 311-12 (6th Cir. 2010) (rejecting argument that officers could not be liable for malicious prosecution because they did not "make" the decision to prosecute).

Defendant Dahl only disputes the causation element of plaintiff's retaliation claim.  Here, the only proof plaintiff offers to support causation is temporal proximity.  That is, his discharge from the RTP program, which, according to plaintiff, set the chain of events in motion, occurred within days of giving his list of complaints to defendant Dahl.  The Sixth Circuit has "considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive."  *King*, 680 F.3d at 695.  "In theory, temporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive."  *Coleman v.*

*Bowerman*, 474 Fed.Appx. 435, 437 (6th Cir. 2012), citing *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004). "However, when other evidence of retaliatory motive is lacking, [the Sixth Circuit has] been reluctant to hold that temporal proximity is sufficient to establish causation." *Id*., citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). In analyzing claims based on temporal proximity, courts must look to "the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). The Sixth Circuit's "case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference." *Id.* As to defendant Dahl, plaintiff offers no evidence other than temporal proximity regarding causation, and in particular, evidence suggesting that Dahl's actions in discharging plaintiff from the RTP were motivated by a desire to punish plaintiff. Under these circumstances, summary judgment in defendant Dahl's favor is appropriate.

C.   Defendants Beauvais and Sermo - Eighth Amendment Deliberate Indifference

Plaintiff's claim against defendants Beauvais and Sermo is for deliberate

indifference, in violation of the Eighth Amendment.  (Dkt. 101, ¶ 29).  Although not expressly stated, the claim is apparently based on deliberate indifference to psychological/psychiatric needs.  Defendants point to their affidavits, which show that reasonable precautions were made to protect plaintiff from self-harm.  According to defendants, the facts reveal that plaintiff was a difficult patient.  Nevertheless, they made a significant effort to provide adequate treatment.  Based on the facts of this case, defendants argue that their actions were not objectively unreasonable.

According to plaintiff, defendants Sermo and Beauvais had knowledge of his continuous suicidal behaviors over the course of 14 days and deferred from transferring him from segregation to a crisis stabilization program or other appropriate mental health treatment.  Plaintiff also claims Sermo generated and falsified documents that plaintiff had not engaged in self-injurious behaviors and contradicted himself in a later document that he had engaged in self-injurious behaviors, noting that plaintiff has a history of "personal agendas for secondary gains."  Plaintiff also asserts that Sermo intentionally completed a Misconduct Sanction Screening form such that the hearing officer was able to sanction him to the maximum sanction of detention despite his severe mental illness.

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can

demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk."  *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm."  *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).  "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention."  *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

Regarding plaintiff's claims against defendants Beauvais and Sermo, in cases where an inmate alleges deliberate indifference but the record demonstrates

that the inmate received medical attention and is, in essence, filing suit because he

disagrees with certain treatment decisions made by the medical staff, the plaintiff

fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196

Fed.Appx. 410, 411 (6th Cir. 2006) ("[A]s the record reveals that McFarland has

received some medical attention and McFarland's claims involve a mere

difference of opinion between him and medical personnel regarding his treatment,

McFarland does not state a claim under the Eighth Amendment."); *White v. Corr.*

*Med. Servs., Inc.*, 94 Fed.Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of

the complaint for failure to state a claim where the essence of plaintiff's claims

was that he disagreed with the defendants' approaches to his medical treatment

where defendant discontinued plaintiff's previous course of treatment and

prescribed what plaintiff considered to be less effective treatment); *Catanzaro v.*

*Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. 2010) (plaintiff

failed to state a claim of deliberate indifference when "he specifically alleges that

he was given medications that proved ineffective to relieve his symptoms, rather

than medications that he believed were more effective, such as Drixoral, Sudafed

and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. 2010); *Allison v.*

*Martin*, 2009 WL 2885088, at *7 (E.D. Mich. 2009) (plaintiff failed to state a

claim of deliberate indifference in violation of the Eighth Amendment when the

complaint reveals plaintiff was seen over a dozen times for his eczema and was

given medication, though not the "type" and quantity he requested).

Here, plaintiff claims that he should have been transferred to the crisis stabilization unit and that his mental health problems were not treated appropriately in the time frame described. Given the extensive treatment that was provided, or attempted to be provided to plaintiff as documented in the affidavits of these defendants, along with the medical records provided by both parties, it is clear that plaintiff received regular medical treatment, was a very difficult patient, and the medical staff attempted to provide appropriate treatment, which was often refused by plaintiff. Under these circumstances, the undersigned finds no evidence of deliberate indifference as to defendants Beauvais and Sermo.

   D.     Defendant LeDuc - Eighth Amendment Deliberate Indifference

Plaintiff claims that defendant LeDuc violated his rights under the Eighth and Fourteenth Amendments. (Dkt. 101, ¶ 30). The only allegation against LeDuc is that, on a single occasion, he refused to offer plaintiff a bathroom break or a drink of water when plaintiff was in top-of-bed restraints. *Id*. at ¶ 16. Although this allegation is disputed, even if plaintiff's version of the event is believed, LeDuc argues that he has not stated a claim. Defendant LeDuc asserts that he was unable to find any case law that the brief deprivation described by plaintiff was clearly unlawful. LeDuc points out that it is not up to him to prove that the law was not clearly established. Rather, "[t]he burden of convincing a

court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). Defendant LeDuc claims that his actions were not clearly unlawful and therefore, he is entitled to qualified immunity.

According to plaintiff, he was placed in TOB restraints on April 9, 2012 "before 2100 hours resulting from self-injurious or suicidal behaviors..." (Dkt. 115, Pg ID 1451). He says that "after 2200 hours Defendant Leduc [sic] entered Plaintiff's cell to check his restraints, however, he denied Plaintiff an opportunity for a break, to get water or to use the bathroom." (Dkt. 115, Pg ID 1451). Plaintiff contends that, for no legitimate penological purpose, he was denied adequate access to water and a restroom, and forced to maintain an uncomfortable position in his own urine and feces, naked in the extremely cold cell for an extended period of time, subjecting him to a significant risk of wrist and arm problems, dehydration, thirst, infectious disease, and prolonged physical pain. According to plaintiff, the Court should infer from the evidence that defendant LeDuc knew that plaintiff was completely immobile and could not independently cover himself up, access drinking water or use the restroom, and chose to ignore these conditions as punishment for his perceived mental illness. Plaintiff maintains that the facts presented, if taken as true, are sufficient to find that force was applied maliciously and sadistically to cause harm and that defendant LeDuc

disregarded a substantial risk of harm to plaintiff.

As explained in *Boles v. Lewis*, 2008 WL 4534043, *5 (W.D. Mich. 2008), the Supreme Court has recognized that the "deprivation of bathroom breaks that created a risk of particular discomfort and humiliation," could, under some circumstances, implicate the Eighth Amendment. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).[1]  In *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999), decided before *Hope*, the Sixth Circuit held that temporary denials of the opportunity to use a toilet are not cruel or unusual.  The plaintiff in *Hartsford* was held in top-of-bed restraints for 18 hours after he damaged his cell.  The court concluded that the denial of access to a toilet for 18 hours would not rise to the level of an

---

[1]     As the facts are alleged by Hope, the Eighth Amendment violation is obvious. Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to the prison. He was separated from his work squad and not given the opportunity to return to work. Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the "basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man." *Trop v. Dulles*, 356 U.S. 86, 100 (1958). This punitive treatment amounts to gratuitous infliction of "wanton and unnecessary" pain that our precedent clearly prohibits.

*Hope*, 536 U.S. at 738.

Eighth Amendment violation. *Id*. According to *Boles*, the *Hartsfield* conclusion is itself dicta, as the court expressly found that the defendants had presented unrebutted sworn testimony and records showing that plaintiff had been offered toilet breaks and that he took advantage of them at least once. *Boles*, at *5. In *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), another pre-*Hope* decision, the Sixth Circuit rejected a prisoner's Eighth Amendment claim based on allegations that he was "deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet ...." *Id*. The *Dellis* court addressed a single instance of deprivation. Moreover, the plaintiff's allegations in *Dellis* were that his toilet was not working, not that he could not use the toilet and was forced to soil himself.

These facts are distinguishable from *Hope* and other cases involving deprivation of bathroom breaks while restrained, in terms of the various conditions while restrained and the length of time of the alleged denial of bathroom breaks. In this case, plaintiff alleges that defendant LeDuc denied him access to the bathroom on one occasion approximately one hour after he first restrained.[2]

---

[2] Plaintiff has separately moved to strike LeDuc's affidavit, claiming that it is not based on personal knowledge. (Dkt. 124). Plaintiff's objection is based on statements in the affidavit regarding the actions of other prison staff who purportedly checked on plaintiff during the time frame he was in restraints. For purposes of LeDuc's motion for summary judgment, this portion of the affidavit was not considered. As described above, LeDuc only checked in on plaintiff one time, which plaintiff does not dispute. The remainder of LeDuc's statements in his affidavit, whether they are based on personal knowledge or not, do not affect plaintiff's specific claims against this particular defendant or affect whether this particular defendant's actions were

Plaintiff does not allege that LeDuc checked on him at any other time while he was in TOB restraints and denied him bathroom breaks on any other occasions. Rather, plaintiff only alleges that he was denied at bathroom break by LeDuc on that one occasion in a relatively short period of time after he was first restrained. Under these circumstances, the undersigned finds no Eighth Amendment violation based on deliberate indifference.

Plaintiff also appears to allege excessive force. As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Annabel v. Armstrong*, 2011 WL 3878379, *13 (W.D. Mich. 2011), *adopted by*, 2011 WL 3878385 (W.D. Mich. 2011), citing *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, (1992); *see Wilkinson v. Gaddy*, 559 U.S. 34 (2010). As set forth above, plaintiff must satisfy both an objective and subjective test to establish a viable Eighth

---

unconstitutional or objectively reasonable. To the extent that other defendants are accused of wrongful behavior in this regard is not at issue in this motion. Plaintiff's motion will be denied via separate order.

Amendment claim.  To meet the objective component, the prisoner must be subjected to a serious deprivation.  *Wilson*, 501 U.S. at 298.  Federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery.  *Annabel*, at \*13, citing *Leary v. Livingston Cnty.*, 528 F.3d 438, 445 (6th Cir. 2008); *Pruitt v. Hatchett*, 292 Fed.Appx. 408, 409 (5th Cir. 2008).  If the objective component of the Eighth Amendment is to mean anything, it cannot be satisfied by a mere unwanted touching.  *Annabel*, at \*13, citing *Wilkins v. Gaddy, supra* ("[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."); *Walters v. Corrections Corp. of Am.*, 119 Fed.Appx. 190, 192-93 (10th Cir. 2004); *Hampton v. Alexander*, 1996 WL 40237, at \* 1 (6th Cir. 1996); *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir.1994) (*en banc*).

While plaintiff's argument in this regard is so underdeveloped and vague, it is waived,[3] the undersigned also concludes that the placement of plaintiff in TOB restraints under the circumstances was objectively reasonable.  Plaintiff does not deny that he was suicidal, had engaged in acts of self-harm, and was refusing

---

[3]  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at \*6 (W.D. Mich. 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (reasoning that "judges are not like pigs, hunting for truffles buried in" the record) (citation omitted).

medical treatment.  Defendants acted appropriately by using TOB restraints under the circumstances.

Plaintiff has also alleged that defendants violated his Fourteenth Amendment Due Process rights through the use of TOB restraints.  "The Supreme Court has cautioned courts to carefully scrutinize so-called substantive due process claims brought under § 1983 'because guideposts for responsible decisionmaking are scarce and open-ended.'" *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002), quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).  "[W]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Banks v. City of Whitehall*, 344 F.3d 550, 554 (6th Cir. 2003).  Here, the Eighth Amendment provides plaintiff's explicit constitutional protection against Cruel and Unusual Punishment.  *See Albright*, 510 U.S. at 273; *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990).  Thus, plaintiff has no greater substantive due process rights than the protections provided by the Eighth Amendment.  *See Annabel*, at *16.

    E.   <u>Defendant Pozios - Eighth Amendment Deliberate Indifference</u>

Plaintiff has alleged that Dr. Pozios "deliberately refused to renew the order for . . . [psychotropic] medications," despite the expiration of the order on March 30, 2012. (Dkt. 101, ¶ 7). According to Dr. Pozios, plaintiff has not established a "sufficiently serious" medical need on March 30, 2012 to meet the objective prong of the test for deliberate indifference. Dr. Pozios argues that the evidence, as set forth in the complaint and the attached medical records shows that he has not. By plaintiff's own admission, he was treated in a hospital from March 27 through March 29, 2012. (Dkt. 101, ¶ 5). A physician assistant attempted to evaluate him on March 30, but he refused to cooperate. (Dkt. 112, Ex. F). The medical records from the morning of March 30 reveal that plaintiff had a normal CT scan of the head, a normal EKG and chest x-ray and unremarkable blood tests. *Id*. The health care staff planned to monitor his food intake. *Id*. He was to have "nursing rounds per protocol." *Id*.

Dr. Pozios also points out that plaintiff admits in his complaint, that he began to refuse food and liquids effective March 26, before his hospitalization and reiterates that he continued to deprive himself as of March 29. *Id.* ¶¶ 4-6. This "deprivation" was initiated by plaintiff himself, not Dr. Pozios. According to Dr. Pozios, plaintiff omits his refusal to take his medications while on his self-imposed hunger strike and refusal to communicate with Dr. Pozios when the doctor attempted to evaluate him for the purpose of renewing his medications on

March 30. (Dkt. 113, Ex. B, and records attached as Exs. G and H). Dr. Pozios asserts that this is not a case where medical care was denied in the face of an acute physical condition. Rather, this is a case where a prisoner refused medical care and treatment offered to him. According to Dr. Pozios, not only do the records demonstrate that plaintiff did not have a sufficiently serious medical need to support an Eighth Amendment claim of deliberate indifference, they also show that plaintiff received a substantial amount of care, which defeats the subjective component of plaintiff's deliberate indifference claim. The evidence does not support a contention that plaintiff was forced to suffer despite his refusal of medications. In fact, he was visited by his case manager and medical personnel on a daily basis. Dr. Pozios contends that the medical records show there was ongoing care and treatment during each of the days plaintiff was allegedly deprived of treatment, including continuous observation, rounds by nursing staff, physician involvement and evaluations by psychologists. (Dkt. 112, Exs. G-S). In fact, the records show 24 interventions or attempted interventions on behalf of plaintiff by various healthcare personnel between the dates of March 30 and April 6, 2012. *Id*.

Dr. Pozios contends that the medical records clearly demonstrate that once he began threatening to injure himself, plaintiff was placed on close observation and was later placed in restraints. In deliberate indifference cases involving

medical care, the general rule is that where a prisoner has received some medical attention, but disputes the adequacy of that treatment, "federal courts are reluctant to second guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law." *Westlake*, 537 F.2d 857, 860. According to Dr. Pozios, it is clear from the facts presented here that plaintiff received ongoing and comprehensive medical attention, albeit not the attention he preferred. Dr. Pozios says that his decision not to renew plaintiff's medications on March 30 – which occurred because the prisoner refused to permit a psychiatric evaluation – represents a classic example of the exercise of medical judgment.

Dr. Pozios also argues that plaintiff has failed to provide any credible evidence regarding the second component of the test for deliberate indifference, i.e., that Dr. Pozios had the requisite "culpable state of mind." The evidence shows that Dr. Pozios attempted to evaluate plaintiff for the purpose of renewing his medications. The reason the prescription was not renewed was that Dr. Pozios "could not evaluate" plaintiff because he refused to come out of his cell or to communicate with the doctor at all. (Dkt. 112, Exs. G and H). Dr. Pozios had a legitimate reason for declining to renew the medications in view of plaintiff's refusal to take them, and an inability to determine whether the medications he had been prescribed were appropriate for his needs. In addition, Dr. Pozios points out that plaintiff was not requesting medical care for his condition, he was refusing the

treatment offered.  Again, Dr. Pozios contends that this case implicates the exercise of professional judgment, which does not translate into a constitutional claim just because a prisoner is involved.

According to plaintiff, Dr. Pozios's affidavit is inadmissible hearsay because Dr. Pozios affirmatively asserts that he received information from an unidentified source, which is information not based on his personal knowledge and he fails to identify the source.  Plaintiff also argues that Dr. Pozios's affidavit is inherently untrustworthy because it says plaintiff refused to meet with him on three occasions while the medical records reflect only two refusals.  In addition, plaintiff says the signatures on the medical records and the affidavit do not match. Plaintiff also objects to the introduction of the medical records because they are untrustworthy under the federal rules, as evidenced by their inconsistency with Dr. Pozios's affidavit.[4]

Plaintiff also argues that Dr. Pozios deferred prescribing psychotropic medications instead of ordering involuntary administration of medication pending the convening of a hearing committee.  According to plaintiff, Dr. Pozios knew of his continuous exhibition of suicidal behaviors over the course of 14 days and deferred transferring him from segregation to a Crisis Stabilization Programs or

---

[4] Given the conclusion below that there is a question of fact regarding subjective component of plaintiff's deliberate indifference claim against Dr. Pozios, the Court need not resolve the alleged defects in his affidavit.

other appropriate placement where his mental health needs could be met. Because Dr. Pozios was indifferent to plaintiff's psychological needs, in particular his suicidal tendency, plaintiff says he easily satisfies the objective component of the deliberate indifference test. For the subjective prong, plaintiff relies primarily on the declaration of inmate Brent Lang, who describes Dr. Pozios' plan to deprive plaintiff of medical treatment and his wish that plaintiff would die. (Dkt. 115, Pg ID 1477-79).

As to the objective prong, plaintiff has satisfied this test. A serious medical need generally falls into one of two categories: (1) a medical need diagnosed by a physician as requiring treatment; or (2) a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), *cert. denied*, 486 U.S. 1006 (1988). As to the latter category, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Dodson v. Wilkinson*, 304 Fed.Appx. 434, 439 (6th Cir. 2008), quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). While Dr. Pozios argues that plaintiff does not meet the objective prong, his argument is primarily based on the fact that plaintiff was receiving treatment at the time. However, Dr. Pozios and other medical personnel clearly recognized that

plaintiff had a diagnosed medical condition requiring treatment.  Indeed, they were providing – or attempting to provide – such treatment.  Dr. Pozios also argues that plaintiff failed to place verifying medical evidence into the record.  However, as already explained, plaintiff's claim is based on a condition that was actually diagnosed as needing treatment.  Thus, no verifying medical evidence is necessary.

As to the subjective prong, were it not for the affidavit of Brent Lang, the undersigned would have concluded that the facts merely present a difference in opinion regarding the appropriate course of treatment, which does not rise to the level of a constitutional violation.  Here, however, Mr. Lang says that Dr. Pozios told him that he refused to transfer plaintiff to the Crisis Stabilization Unit because he "hoped that Randy Berkshire would have died."  (Dkt. 115, Pg ID 1478).  According to Mr. Lang, Dr. Pozios told him that he wanted to use plaintiff's death as an example to other prisoners who choose to "act out their mental illness while housed at the Macomb Correctional Facility."  (Dkt. 115, Pg ID 1478).  Mr. Lang also states that Dr. Pozios asked him to testify that plaintiff told him that he was manipulating his mental illness and that the allegations against him, Beauvais, and Sermo were completely fabricated.  *Id*.  Dr. Pozios asserts that the Lang declaration is "ludicrous on its face" and is a practical impossibility because Dr. Pozios was not served with the complaint in this case until after the alleged

conversation with Mr. Lang took place.  However, Dr. Pozios has not provided an affidavit or other evidence denying that he was aware of the lawsuit at the time this alleged conversation took place.  Even if he had provided such an affidavit, plaintiff has still presented a material issue of fact that the jury must sort out regarding whether Dr. Pozios had a sufficiently culpable state of mind.  For these reasons, Dr. Pozios' motion for summary judgment should be denied.[5]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion for summary judgment filed by defendants Beauvais, Dahl, LeDuc, and Sermo be **GRANTED** and that defendant Pozios' motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

---

[5]   A jury way well find that Mr. Lang's story is "ludicrous" and "fantastical," however, the Court cannot make such credibility determinations on summary judgment. *Peterson v. Johnson*, 714 F.3d 905, 910 (6th Cir. 2013) (In reviewing a motion for summary judgment, the court should draw all reasonable inferences in favor of the nonmovant and avoid weighing the evidence or making credibility decisions.).

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 11, 2014                         s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 11, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kevin R. Himebaugh and Maureen C. Adkins, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Randy Berkshire, ID# 371645, BELLAMY CREEK CORRECTIONAL FACILITY, 1727 W. Bluewater Highway, Ionia, MI 48846.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov