UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R~ANDY~ B~ERKSHIRE~,

        Plaintiff,

v.

D~EBRA~ D~AHL~, et al.,

        Defendants.
_____/

Case No.  12-12038

S~ENIOR~ U~NITED~ S~TATES~ D~ISTRICT~ J~UDGE~
A~RTHUR~ J. T~ARNOW~

M~AGISTRATE~ J~UDGE~ M~ICHAEL~ J. H~LUCHANIUK~

### ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION [129] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [110] AND DENYING DEFENDANT'S MOTION TO DISMISS [112]

On August 11, 2014, Magistrate Judge Hluchaniuk issued a Report and Recommendation ("R&R") [129] recommending that the Court grant Defendants Dahl, Beauvais, Sermo, and LeDuc's Motion for Summary Judgment [110]. Plaintiff timely filed an Objection [132].  The R&R [129] also recommends that the Court deny Defendant Pozios's Motion for Summary Judgment [112].  Defendant Pozios timely filed an Objection [131] and Plaintiff filed a Response [133].

For the reasons stated below, the Court **HEREBY ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the R&R [129].  Defendants' Motion for Summary Judgment [110] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Objection [132] is **SUSTAINED IN PART AND OVERRULED IN**

**PART**. Defendant Pozios's Motion for Summary Judgment [112] is **DENIED**. Defendant Pozios's Objection [131] is **OVERRULED**.

## FACTUAL STATEMENT

The Court adopts the explanation of facts as set out in the R&R [129]. They read as follows:

Plaintiff originally filed his complaint on May 7, 2012. (Dkt. 1). Conceding that he failed to exhaust his administrative remedies before initiating this action, plaintiff moved for dismissal without prejudice. (Dkt. 51). This Court dismissed the case without prejudice. (Dkt. 54). Plaintiff then filed a motion to reinstate his case, as well as a motion to vacate the order dismissing his case. (Dkt. 59, 61). The Court granted plaintiff's motion to reinstate his case and granted his motion to file an amended complaint. (Dkt. 62). Plaintiff filed an amended complaint on August 15, 2013. (Dkt. 70). Defendants Dahl, Beauvais, and Sermo filed a motion to dismiss. (Dkt. 81). Plaintiff responded by seeking to amend his complaint yet again. (Dkt. 84). This Court granted plaintiff leave to amend and terminated as moot the pending dispositive motion. (Dkt. 96).

Defendant LeDuc was subsequently served and filed an appearance. (Dkt. 98). Plaintiff then filed his second amended complaint. (Dkt. 101). In his second amended complaint, plaintiff claims that defendant Dahl discharged him from the Residential Treatment Program (RTP), in alleged retaliation for complaints that plaintiff had made.

(Dkt. 101, ¶¶ 2-3). Plaintiff was elected as a Housing Unit Representative (HUR) in March 2012. (Dkt. 101, ¶ 2). On March 19, 2012, plaintiff submitted a three page complaint to RUM Wilson and defendant Dahl addressing several concerns on behalf of other prisoners in the RTP amounting to possible constitutional violations. *Id*. On March 21, 2012, plaintiff alleges that Dahl changed his GAF score to 53, intentionally downgraded all of his diagnoses by March 22, 2012, and was responsible for his retaliatory discharge from RTP. *Id*. According to plaintiff, Dahl discharged him from RTP without a mental health assessment, diagnostic evaluation and treatment or disposition planning in according with applicable operating procedures. Plaintiff was then transferred to a lower level of care where fewer privileges were offered and more restrictions imposed. (Dkt. 101, ¶ 3).

Plaintiff asserts that defendant Beauvais issued a misconduct ticket after plaintiff expressed homicidal ideation. *Id*. at ¶ 4. Plaintiff next claims that on April 3, 2012, defendant Sermo conducted a face-to-face interview that lasted only five minutes. Appropriate treatment was discussed. *Id*. at ¶ 11. The next day, plaintiff had a hearing on the ticket written by defendant Beauvais. Plaintiff claims that defendant Sermo completed a Misconduct Sanction Screening form, which enabled the hearing officer to impose the maximum sanction. Plaintiff was found guilty. *Id*. at ¶ 12.

Next, while he was in top-of-bed restraints, plaintiff claims that defendant LeDuc came to check on him, but refused to offer a break or water. (Dkt. 101, ¶ 16).

Plaintiff states that Defendants Sermo and Beauvais entered his cell at some point and told plaintiff that he was being transferred to the Crisis Stabilization Program (CSP). *Id*. at ¶ 23. Plaintiff asserts that defendants Beauvais and Sermo (as well as defendant Pozios) were subjectively aware that he was at risk of suicide prior to April 9, 2012, but failed to take appropriate measures, resulting in plaintiff's attempted suicide. *Id*. at ¶ 26. In his "Statement of Claim," plaintiff alleges that defendant Dahl's actions constituted First Amendment retaliation; that defendant Sermo's and Beauvais's actions constituted deliberate indifference in violation of the Eighth Amendment; and that defendant LeDuc violated plaintiff's Eighth and Fourteenth Amendment rights. *Id*. at ¶¶ 28-30.

Debra Dahl was the Unit Chief of the Residential Treatment Program at the Macomb Correctional Facility. (Dkt. 110, Ex. 1, Affidavit of Debra Dahl, ¶ 1). According to Dahl, plaintiff was not discharged from RTP because he made complaints. Rather, plaintiff was discharged because he was no longer in need of RTP services and was determined to be able to function in Level IV General Population. *Id*. at ¶ 5. The decision was made after plaintiff's progress was discussed at a case management meeting. *Id*. at ¶ 4.

Donna Beauvais is currently the Unit Chief of the RTP at Macomb, but during the time of plaintiff's claims she was the Unit Chief of the Outpatient Mental Health Program at Macomb. (Dkt. 110, Ex. 2, Affidavit of Donna Beauvais, ¶ 1). On March

4

26, 2012, defendant Beauvais was approached by a teacher who expressed concern that plaintiff appeared agitated. *Id.* at ¶ 3. She met with plaintiff, who stated that he did not know that he was going to be discharged from RTP and that he could not lock in general population. *Id.* at ¶ 4. Plaintiff indicated that he could not get along with his bunk mate. *Id.* at ¶ 5. After defendant Beauvais encouraged plaintiff to return to his housing unit, plaintiff stated that if a certain officer bothered him, then he was going to "slice his throat." *Id.* at ¶ 6. Defendant Beauvais contacted the control center about the threat and then wrote a misconduct ticket. *Id.* at ¶ 7. Defendant Beauvais then assigned defendant Christopher Sermo as plaintiff's case manager to manage plaintiff's psychological treatment. *Id.* at ¶ 9.

Christopher Sermo is a psychologist at Macomb. (Dkt. 110, Ex. 3, Affidavit of Christopher Sermo, ¶ 1). After plaintiff was put in segregation based on the ticket written by defendant Beauvais, he was put on defendant Sermo's caseload. *Id.* at ¶ 3. Defendant Sermo reviewed plaintiff's medical record and informed the psychiatrist that plaintiff's medication order was about to expire. *Id.* at ¶ 4. Defendant Sermo, along with Dr. Pozios (the psychiatrist), attempted to interview plaintiff on March 30, 2012, but plaintiff refused to speak with them. *Id.* at ¶ 6. A few days later, defendant Sermo learned that plaintiff had been placed in an observation cell after stating that he was on a hunger strike. Plaintiff refused to speak with defendant Sermo.

Plaintiff continued to be monitored by staff as a precaution, even though he had not expressed being suicidal. *Id*. at ¶ 7. After it was reported that plaintiff ate, the management plan was adjusted and plaintiff finally agreed to speak with defendant Sermo. *Id*. at ¶ 8. Plaintiff's psychotropic medications were renewed. *Id*. at ¶ 9. A few days later when defendant Sermo went to evaluate plaintiff, an officer reported that plaintiff had been found with a noose in his cell and was banging his head against the wall. Plaintiff was moved to an observation cell and placed in soft restraints. *Id*. at ¶ 10. Defendant Sermo asked about what had happened. Plaintiff indicated that he had not been taking his medications. *Id*. at ¶ 11. Plaintiff was placed in the Crisis Stabilization Program for further evaluation. *Id*. at ¶ 12. Plaintiff was later transferred to the Outpatient Program, where he was seen by other staff. *Id*. at ¶ 13. Plaintiff was then cooperative and compliant with his medications. *Id*. at ¶ 14. Defendant Sermo had no further contact after being notified of this lawsuit. *Id*. at ¶ 15.

Robert LeDuc is currently a Captain, but was a Lieutenant at the time of the allegations. (Dkt. 110, Ex. 4, Affidavit of Robert LeDuc, ¶ 1). Defendant LeDuc and Nurse Quiles checked plaintiff's restraints on April 9, 2012. Plaintiff was offered a restroom break and water, but he refused. *Id*. at ¶ 3. During Defendant LeDuc's shift, plaintiff was checked four times. *Id*. at ¶ 7. Plaintiff was removed from top-of-bed restraints the morning of April 10, 2012, at which time he was given the opportunity to use a shower and restroom, and to drink water. *Id*. at ¶ 6.

Defendant Dr. Pozios was scheduled to meet with plaintiff on March 30 for a psychiatric evaluation and medication renewal. (Dkt. 112, Ex. F). However, plaintiff refused to come out of his cell. *Id.* When Dr. Pozios and the case manager attempted to assess plaintiff at his cell, he refused to respond to questions. *Id.* Dr. Pozios's note from that encounter states as follows:

> Mr. Berkshire's case manager and I attempted to meet with Mr. Berkshire but he refused. I was informed that Mr. Berkshire's medication orders are due to end today, but that he has been refusing his psychotropic medications. Because I could not evaluate Mr. Berkshire and review his medications, I elected not to renew his medications. I will attempt to meet with Mr. Berkshire again in the next couple of weeks.

(Dkt. 112, Ex. H). On March 31, the nursing staff wrote that plaintiff had stayed in bed since his hospital admission. (Dkt. 112, Ex. I). He claimed he could not remember when he last had something to eat or drink. *Id.* However, the nurse's physical evaluation revealed no signs of dehydration. *Id.* Plaintiff appeared alert and oriented and denied that he needed any help. *Id.*

Due to his refusal to eat, plaintiff was transferred to an observation cell and asked to notify health care if he had any concerns or issues. (Dkt. 112, Ex. J). He continued to refuse food, fluids and medications on April 1, 2012. (Dkt. 112, Ex. K). He signed a form acknowledging that he was refusing to eat, and that he was not taking his medications because he "doesn't need meds." (Dkt. 112, Ex. K, p. 2). He remained

under close watch on April 2, 2012, and continued to refuse to speak to his case manager and the psychiatrist. (Dkt. 112, Ex. L). He continued to refuse his medications. (Dkt. 112, Ex. M). Finally, on the evening of April 3, 2012, plaintiff ended his self-imposed hunger strike. (Dkt. 112, Ex. N). However, he continued to refuse medications. (Dkt. 112, Ex. O).

On April 5, plaintiff told his nurse that his medications were not being renewed until he had a psychiatric evaluation. (Dkt. 112, Ex. P). He reported that he was upset because he had been informed that "his psych problems are no longer valid to support meds plus noncompliant with meds." (Dkt. 112, Ex. Q). He was scheduled to be seen by the psychiatrist on April 6. *Id*. However, due to his continued noncompliance with health care personnel, Dr. Pozios was not able to evaluate him. (Dkt. 112, Ex. R). His medications were renewed for a month without refills, and he was scheduled for a medication review on April 9. *Id*. Plaintiff agreed he would take his medications and "take one day at a time." (Dkt. 112, Ex. S). Despite his promise, plaintiff continued to refuse to take his medications.

On April 9, he was evaluated by Dr. Pozios as previously scheduled. Earlier in the day, he had been found with a makeshift noose, although it was not clear that he had actually had the noose around his neck. (Dkt. 112, Ex. T). Due to his threats of self-harm, plaintiff was transferred to an observation cell and placed in soft restraints. *Id*. During the course of Dr. Pozios's April 9 evaluation, plaintiff stated that he had

been refusing his medications since March 26. *Id*. When Dr. Pozios attempted to question him further, he was uncooperative and refused an offer to discuss alternative medications. *Id*.

The only factual allegation in the complaint against Dr. Pozios is a purported failure to renew his medications on March 30, 2012. The pertinent portion of the Complaint states as follows:

> On March 30, 2012 it was noted in the Health Care logbook and Defendant Pozios was informed that Plaintiffs psychotropic medications had expired. Defendant Pozios had deliberately refused to renew the order for those medications. The psychotropic medications prescribed to Plaintiff, are used to help him rehabilitate his severe mental disorders, including suicidal attempts.

(Dkt. 1, ¶ 7, Pg ID 1191). Plaintiff claims that as a result of the "deprivation" of medications, his mental health deteriorated, and he attempted suicide. R&R [129] at 2–9.

## LEGAL STANDARD

The Court reviews objections to an R&R on a dispositive motion *de novo*. 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

9

to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

**I. Defendants' Motion for Summary Judgment [110]**

Plaintiff's Objection [132] presents three arguments. First, Plaintiff objects that the R&R erred in concluding that temporal proximity is the only evidence that Defendant Dahl retaliated against him. Dahl only disputes the causation element of Plaintiff's First Amendment retaliation claim. Under the causation element of a prisoner's prima facie case on a First Amendment retaliation claim, the subjective motivation of the decisionmaker is at issue. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Plaintiff must show that (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise

10

of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (internal citation omitted). "[T]emporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004). "In analyzing the facts in temporal proximity cases, [the Court looks] at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). In March 2012, Plaintiff was elected as a Housing Unit Representative. On March 19, 2012, Plaintiff submitted a three-page complaint to Resident Unit Manager Wilson and Defendant Dahl—conduct that Defendant Dahl does not dispute was protected. A mere two days later, Dahl changed Plaintiff's Global Assessment Functioning to 53—slightly above the score of 51 needed for Plaintiff to have remained in the Residential Treatment Program—and only three days later downgraded his diagnoses for post-traumatic stress disorder and major depression, leaving only his intermittent explosive disorder diagnosis intact. Neither party has submitted evidence about Plaintiff's length of treatment or progress in the Residential Treatment Program, so it is impossible to conduct a totality-of-the-circumstances analysis on those bases. Within two and three days of Plaintiff's protected conduct, Dahl adjusted Plaintiff's GAF score to just high enough to remove Plaintiff from the Residential Treatment Program and indicated that two major mental disorders that had been intractable for

11

nearly Plaintiff's entire life had resolved. Given the temporal proximity of Plaintiff's protected conduct to Dahl's adverse action and the totality of the other circumstances, the Court is satisfied that Plaintiff has stated a prima facie case for retaliation. Plaintiff's Objection [132] is sustained as to Defendant Dahl.

Second, Plaintiff objects that he established that he had a serious medical need and that he established a question of fact as to whether Defendants Beauvais and Sermo were subjectively deliberately indifferent to his serious medical need. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). During the relevant time period, Plaintiff was in the throes of a weeks-long period of mental instability and neurological distress. He was cited for homicidal ideation[1], he was placed in top-of-bed restraints, he often refused food and water, he was transferred to the Crisis Stabilization Unit, he suffered convulsive seizures, and eventually he attempted suicide on April 9, 2012. During the relevant time period had diagnoses of post-traumatic stress disorder, major depression, and intermittent explosive disorder, and a facility doctor had been prescribing Plaintiff psychiatric

---

[1] The facility used Plaintiff's homicidal ideation as the basis for penalizing him and placing him in segregation. Yet, the facility's medical records, which form the basis of Plaintiff's access to mental health care, state repeatedly that Plaintiff does not express homicidal ideation.

12

medication since December 2011. The facility's own records indicate that Plaintiff "has a significant [history] of psychiatric intervention . . . and has an extensive history of harm to self and others." The Court is satisfied that Plaintiff has met the requirements of the objective prong.

The subjective prong of the test for deliberate indifference requires an inmate to show that prison officials had "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Brent Lang, along with several other prisoners, submitted declarations to the Court. In part, Lang's declaration states that Pozios told him that Beauvais and Sermo knew that Plaintiff was suffering from a major mental disorder and had engaged in suicidal behaviors during the relevant time period. Lang's declaration also states the three of them—Beauvais, Sermo, and Pozios—delayed transferring Plaintiff to the Crisis Stabilization Unit because they hoped that Plaintiff would die. From the evidence, a reasonable jury could infer that Beauvais and Sermo had the requisite culpability to satisfy the subjective prong of the test for deliberate indifference. Plaintiff's Objection [132] is sustained as to Defendants Beauvais and Sermo.

13

Plaintiff's third objection goes to only his claim for deliberate indifference against Defendant LeDuc.[2] Plaintiff alleges that LeDuc denied him an opportunity to use the restroom after one hour in top-of-bed restraints. The R&R [129] recommends that the Court conclude that LeDuc is entitled to summary judgment on the basis of qualified immunity because what he did is not clearly unlawful. Plaintiff objects that he should be given the opportunity to conduct discovery about whether LeDuc had a ministerial duty to offer more frequent bathroom breaks to Plaintiff. Even if LeDuc did have a policy-based obligation to offer Plaintiff more frequent breaks, breach of that duty would not rise to the level of clearly unlawful. *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014). Plaintiff's Objection [132] is overruled as to LeDuc.

## II. Defendant Pozios's Motion for Summary Judgment [112]

The R&R [129] recommends denying Defendant Pozios's Motion for Summary Judgment [112]. Pozios filed an Objection [131], which presents three arguments. First, Defendant objects that the R&R erred in concluding that Plaintiff established a serious medical need on March 30, 2012, which is the only date at issue relative to Defendant Pozios. Although Plaintiff's serious medical need was determined *supra*, the Court will analyze the status of Plaintiff's serious medical need as of March 30, 2012. A medical need is sufficiently serious if it has been diagnosed by a physician

---

[2] Plaintiff concedes summary judgment to Defendant LeDuc on his Fourteenth Amendment claim.

14

that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore*, 390 F.3d at 897. As of March 30, 2012, a doctor at the facility had been prescribing Plaintiff psychiatric medication since December 2011, he had been refusing food, water, and prescribed medication for four days, he had recently suffered convulsive seizures, and had recent diagnoses of post-traumatic stress disorder, major depression, and intermittent explosive disorder. Pozios had access to all of this information on March 30, 2012. As stated in the R&R [129], Plaintiff satisfied the objective prong of the test for deliberate indifference under the Eighth Amendment because he suffered from a sufficiently serious medical condition on March 30, 2012 that had been diagnosed by a physician and mandated treatment.

Defendant Pozios's second objection is that the R&R [129] erred in finding that the declaration submitted by Brent Lang was sufficient to raise a genuine issue of material fact on the subjective prong of the test for deliberate indifference. The subjective prong requires an inmate to show that prison officials had "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867. Deliberate indifference "entails something more than mere negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Lang's declaration in part states that Pozios asked Lang to falsely testify on his behalf in this action.

15

Additionally, Pozios told Lang that Pozios wished Plaintiff had died so that Pozios could use Plaintiff's death as an example to other prisoners who "act out on their mental illness while housed at the Macomb Correctional Facility."  Page ID 1478. Defendant uses ad hominen attacks against Lang and essentially argues that the Court should believe Pozios' word over Lang's.  However, as stated in the R&R [129], the Court cannot make credibility determinations at the summary judgment stage. *Peterson v. Johnson*, 714 F.3d 905, 910 (6th Cir. 2013).  Although Pozios did not make the alleged statements to Lang on the date in question—March 30, 2012—a reasonable jury could infer Pozios's abiding state of mind from Lang's testimony.

Defendant Pozios's third objection is that the R&R erred in failing to consider Plaintiff's deliberate noncompliance with treatment.  Plaintiff's non-compliance with any prescribed medication is irrelevant to the determination of deliberate indifference here because medication non-compliance is a symptom of mental illness.  It is incongruous to accuse a person who has to be restrained from banging his head against the wall of deliberately taking any course of action.  Given the particular nature of Plaintiff's illness, it would be illogical to impute rationality to his resistance to medication.  All of the cases that Defendant cites in support of this argument are both distinguishable from the facts here and are not binding on this Court.

## CONCLUSION

For the foregoing reasons, the Court **HEREBY ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the R&R [129]. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [110] is **GRANTED** as to Defendant LeDuc and **DENIED** as to Defendants Dahl, Beauvais, and Sermo.

**IT IS FURTHER ORDERED** that Defendant LeDuc is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Plaintiff's Objection [132] is **SUSTAINED** as to Defendants Dahl, Beauvais, and Sermo and **OVERRULED** as to Defendant LeDuc.

**IT IS FURTHER ORDERED** that Defendant Pozios Motion for Summary Judgment [112] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Pozios' Objection [131] is **OVERRULED**.

**SO ORDERED**.

                                                                 s/Arthur J. Tarnow
                                                                  Arthur J. Tarnow
Dated: November 12, 2014                 Senior United States District Judge