UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE,

Plaintiff,

v.

DEBRA DAHL, ET. AL.,

Defendant.

_____/

Case No. 12-12038

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE STEPHANIE
DAWKINS DAVIS

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [241]; GRANTING
PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT [183]; DENYING
DEFENDANT BEAUVAIS, SERMO, DAHL AND NELSON'S SECOND MOTION FOR
SUMMARY JUDGMENT [193]; DENYING DEFENDANT POZIOS' SECOND MOTION
FOR SUMMARY JUDGMENT [200]; OVERRULING DEFENDANTS' OBJECTIONS [242;
243] AND SUSTAINING PLAINTIFF'S OBJECTION [244]**

Plaintiff filed a *pro se* prisoner civil rights lawsuit on May 7, 2012. [1]. The

first round of summary judgment motions were decided on November 12, 2014

when the Court adopted the R&R in part [138].On November 25, 2014, Magistrate

Judge Hluchaniuk entered an order for appointment of counsel and stayed the case

[142]. *Pro bono* counsel was obtained for Plaintiff and appointed on June 8, 2015.

[154]. Following a status conference, discovery and dispositive motion deadlines

were set.

Plaintiff filed a Motion for Partial Summary Judgment against Dahl on the issue of liability on April 14, 2016. [183; 184]. Defendant Dahl responded on May 5, 2016 [199] and Plaintiff replied on July 1, 2016 [230]. Defendants Beauvais, Dahl, Nelson and Sermo filed a Second Motion for Summary Judgment [193] on April 20, 2016. Plaintiff responded [209] on May 16, 2016 and Defendants replied [217] on June 3, 2016. Defendant Pozios filed a Second Motion for Summary Judgment [200] on May 10, 2016. Plaintiff responded [221] on June 3, 2016 and Defendant replied [226] on June 16, 2106.

Magistrate Judge Davis held a hearing on the pending Motions for Summary Judgment on September 15, 2016.  A Report and Recommendation (R&R) [241] was issued on March 3, 2017 in which the Magistrate recommended that the Court grant Plaintiff's partial motion for summary judgment, deny Defendant Dahl, Sermo and Beauvais' Motion for Summary Judgment, deny Defendant Pozios' Motion for Summary Judgment, and grant Defendant Nelson's Motion for Summary Judgment. Plaintiff, Defendants Beauvais, Dahl, Sermo and Pozios all filed objections on March 17, 2017 [242; 243; 244]. Plaintiff responded to Defendants' objections [246; 247] on March 31, 2017. Defendants did not file a response to Plaintiff's objection.

For the reasons stated below, the Court adopts the R&R in part [241]; grants

Plaintiff's partial motion for summary judgment [183]; denies Defendant Beauvais,

Sermo, Dahl and Nelson's Second Motion for summary judgment [193]; denies

Defendant Pozios' Second Motion for summary judgment [200]; overrules

Defendants' objections [242; 243] and sustains Plaintiff's objection [244].

STATEMENT OF FACTS

The Magistrate Judge summarized the factual background of the complaint

as follows:

> Plaintiff filed his second amended complaint on November 18, 2013.
> (Dkt.101). In his second amended complaint, plaintiff claims that
> defendant Dahl discharged him from the Residential Treatment
> Program (RTP), in retaliation for complaints that plaintiff had made.
> (Dkt. 101, ¶¶ 2-3). Plaintiff was elected as a Housing Unit
> Representative (HUR) in March 2012. (Dkt. 101, ¶ 2). On March 19,
> 2012, plaintiff submitted a three page complaint (the "Agenda") to
> RUM Wilson and defendant Dahl addressing several concerns on
> behalf of himself and other prisoners in the RTP amounting to
> possible constitutional violations. Id. Agenda, which Mr. Berkshire
> wrote after careful research of MDOC policies, identified six separate
> concerns raised by the RTP residents and the corresponding MDOC
> policies that were being violated by the prison in not addressing the
> concerns. For instance, one of the complaints in the Agenda was that
> some RTP residents were not being permitted access to the materials
> in the law library. The Agenda also pointed out that the alleged lack of
> access violated a specific MDOC Policy Directive. Days later, on
> March 21, 2012, according to plaintiff Dahl changed his GAF score to
> 53, intentionally downgraded all of his diagnoses by March 22, 2012,
> and was responsible for his retaliatory discharge from RTP. Id.
> According to the amended complaint, Dahl discharged him from

RTP without a mental health assessment, diagnostic evaluation and treatment or disposition planning as called for under applicable operating procedures. Plaintiff was then transferred to a lower level of care where fewer privileges were offered and more restrictions imposed. (Dkt. 101, ¶ 3).

Plaintiff asserts that defendant Beauvais issued a misconduct ticket for threatening behavior and placed him in segregation after his Business Education Technology teacher relayed to Beauvais that plaintiff seemed mentally unstable, and plaintiff expressed homicidal ideation to Beauvais. Id. at ¶ 4. Once in segregation, plaintiff stopped eating food and drinking liquids. Within days he was discovered unresponsive in his cell and rushed to the hospital. Id. at ¶ 5. When he was returned to his cell, he continued to decline food and liquids but was not placed in an observation cell or prescribed any psychotropic medications.

Plaintiff's continued refusal of food and liquids apparently led to another health challenge, when, on April 2, 2012 he alleges that he was once again found unresponsive in his cell lying in his own excrement. *Id.* At ¶¶ 8-10. Following that health episode, plaintiff claims that on April 3, 2012, defendant Sermo conducted a face-to-face interview that lasted only five minutes. Appropriate treatment was discussed. *Id*. at ¶ 11. The next day, plaintiff attended the hearing on the ticket written by defendant Beauvais. Plaintiff claims that defendant Sermo completed a Misconduct Sanction Screening form, which enabled the hearing officer to impose the maximum sanction. Plaintiff was found guilty. *Id*. at ¶ 12.

From April 4, 2012 through April 9, 2012, plaintiff continued to deprive himself of food and water. (Dkt. 101, ¶ 13). On April 9, 2012, plaintiff attempted suicide by hanging himself in his cell. Staff restrained him, but refused to call health services and no medical treatment was provided. (Dkt. 101, ¶ 14). The staff also removed all property from plaintiff's cell and placed restraints on his hands and feet. Plaintiff's complaint says he was forced to lay on the cold concrete and that he injured himself by banging his head against the wall. Plaintiff was then placed in four-point top-of-bed restraints,

which he says were painful. He was then placed in five-point top-of-bed restraints. (Dkt. 101, ¶ 15). Defendant Nelson came into plaintiff's cell after midnight that same night, but refused to allow plaintiff a bathroom break. *Id*. at ¶ 17.

Next, while plaintiff was in top-of-bed restraints, defendants Sermo and Beauvais entered his cell and told plaintiff that he was being transferred to the Crisis Stabilization Program (CSP). *Id*. at ¶ 23. Plaintiff asserts that defendants Beauvais and Sermo (as well as defendant Pozios) were subjectively aware that he was at risk of suicide before April 9, 2012, but failed to take appropriate measures, resulting in plaintiff's attempted suicide. *Id*. at ¶ 26. In his "Statement of Claim," plaintiff alleges that defendant Dahl's actions constituted First Amendment retaliation and that the actions of defendants Nelson, Sermo, Pozios, and Beauvais constituted deliberate indifference in violation of the Eighth Amendment. *Id*. at ¶¶ 28-30.

### STANDARD OF REVIEW

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. § 636(b)(1)(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe

the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The Magistrate recommended that the Court grant Plaintiff's Motion for Partial Summary Judgment against Defendant Dahl, deny Defendant Dahl's cross Motion for Summary Judgment, grant Defendant Nelson's Motion for Summary Judgment, and that the remaining motions for summary judgment by remaining Defendants Pozios, Beauvais and Sermo be denied.

### 1. DEFENDANT DAHL'S OBJECTIONS [242]

#### a. OBJECTIONS AS TO MAGISTRATE'S RECOMMENDATION THAT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED

Plaintiff filed a Motion for Partial Summary Judgment [183] against Defendant Dahl, seeking summary judgment against Defendant Dahl for unlawful retaliation against Plaintiff for engaging in activity protected by the First Amendment. The Magistrate recommended granting this motion. Defendant Dahl

filed three objections [242] to this recommendation on March 17, 2017 and

Plaintiff filed a response to these objections on March 31, 2017 [246].

### i. OBJECTION 1: PROTECTED ACTIVITY

In the R&R, the Magistrate Judge recommended granting Plaintiff's Motion

for Summary Judgment against Dahl as to the protected conduct element of the

retaliation; specifically finding that a question of fact existed as to the grievances

that Plaintiff assisted in filing and that the complying and submitting of the Agenda

by Plaintiff was a protected activity.

Defendant Dahl first objects that the Magistrate erred in granting summary

judgment as to the protected conduct element of the retaliation claim, specifically

alleging that Plaintiff was not engaged in a protected activity and that, even if the

Court agreed that Plaintiff's activity was protected, that the conduct he was

engaged in was not clearly established as being protected conduct because there is

no binding Sixth Circuit precedent to support the activity being a protected right

and therefore summary judgment should be denied as to the protected conduct

element.

Defendant Dahl argues that there is an abundance of case law that supports

the idea that participation in the Warden's Forum is not protected conduct and

therefore, Plaintiff's assistance to fellow inmates to draft grievances and Plaintiff's

drafting and submission of the Agenda in accordance with his role as Housing Unit Representative are unprotected activities. However, Defendant Dahl does not address the Magistrate's R&R that clearly distinguished the cases cited by Defendant Dahl, and the objection fails to show any similarities to these cases that would refute the distinctions drawn by the Magistrate in the R&R.

From the substance of the objection, the Court is unclear as to how Defendant Dahl disagrees with the distinctions drawn by the Magistrate. Rather, the objection appears to merely state that participation in the Warden's Forum is not protected conduct and therefore the assistance in filing grievances as well as the submission of the Agenda was not protected as well, seemingly because these actions were done as part of Plaintiff's role in the Warden's Forum.

The objection does not address the main reasoning of the Magistrate, which the Court agrees with, that there is a distinction between the form of the complaint or grievance at issue and the substance. [241 at 23]. As Plaintiff pointed out in their response to Dahl's Motion for Summary Judgment [212] and in his response to Dahl's objections [246], the Sixth Circuit has stated that "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form" and therefore refused the proposition "that the form of expression—i.e., written or oral—dictates whether

constitutional protection attaches." *Holzemer v. City of Memphis*, 621 F.3d 512, 528 (6th Cir. 2010), *citing Pearson v. Welborn*, 417 F.3d 732, 741 (7th Cir. 2006).

In this case, the form of the expression, i.e. that Plaintiff filed grievances and an Agenda that discussed concerns that all RTP residents, including Plaintiff, had with RTP conditions and specific MDOC policies those conditions violated as a part of his role in the Warden's Forum, is irrelevant per Sixth Circuit precedent to whether that conduct was protected. It is the substance that matters, and clearly, grievances and complaints made about violations of MDOC policy and conditions in the RTP are protected conduct.

If Defendant's position were taken, Plaintiff's clearly protected First Amendment rights to file grievances and complaints with prison officials regarding prison conditions would become unprotected as soon as he became the elected Housing Unit Representative, which would be nonsensical. Indeed, even a case that the Defendant herself cites favorably supports this proposition. *See Davis v. Straub*, No. 1:07-CV-156, 2009 WL 4908433, at *3 (W.D. Mich. Dec. 11, 2009) (holding that an informal grievance sent by Plaintiff, a Warden's Forum Representative, constituted protected conduct under the First Amendment). Therefore, the Court agrees with the Magistrate that the conduct at issue was protected.

Defendant further objects that even if the activity at issue is found to be protected conduct, it was not clearly established in 2012 that Plaintiff's activity was protected because there is no binding precedent holding that Plaintiff's warden-forum conduct was protected. However, Defendant Dahl is using that wrong standard in her objection. The Sixth Circuit has held that:

> a right can be clearly established even if there is no case involving "fundamentally similar" or "materially similar" facts. Rather, a right is clearly established when "[t]he reasoning, though not the holding," of a prior court of appeals decision puts law enforcement officials on notice, or when the "premise" of one case "has clear applicability" to a subsequent set of facts.

*Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002), *citing Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002).

Generally, inmates retain their First Amendment rights as long as these actions are not "inconsistent with [Plaintiff's] status as a prison or with the legitimate penological objections of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, prior to 2012 the Six Circuit had held that the form of a grievance or complaint did not determine whether it was protected under the constitution, but rather the substance of the alleged protected activity is what mattered. *See Holzemer v. City of Memphis*, 621 F.3d 512, 528 (6th Cir. 2010). This holding clearly has a reasoning that is applicable in this case. Here, the

conduct at issue includes making grievances and an Agenda concerning complaints about the conditions of the prison. The substance of this conduct is clearly and unquestionably protected by the First Amendment, and the mere form of it being submitted at a time when Plaintiff was a representative on the Warden's Forum does not remove the First Amendment protection from these acts.

As the Magistrate pointed out, in submitting these grievances and complaints, Plaintiff was following MDOC policy that directive for the Warden's Forum. [241 at 26, nt. 2]. Similar to the analysis in *Pearson* , it would be illogical allow Plaintiff, who was merely following policy directive set by MDOC, to be able to be legally retaliated against for merely following that policy by assisting others in filing grievances when they are unable to do that on their own or for his submission of the Agenda on behalf of himself and all his fellow RTP inmates in his role as a Warden's Forum Representative. 417 F.3d at 741. Therefore, the Court agrees with the Magistrate that there is no basis for qualified immunity as to the protected activity element.

## ii.   OBJECTION 2: ADVERSE ACTION

In the second objection, Defendant Dahl alleges that the Magistrate erred in recommending that Plaintiff's Motion for Summary Judgment be granted as to the

adverse action element. Defendant Dahl claims that the case that the Magistrate

relied on, *Hill v. Lappin*, 630 F. 3d 468, 474 (6th Cir. 2010), does not support a

finding of adverse action in the removal of Plaintiff from the inpatient mental

health facility (RTP) to general population setting because *Hill's* holding relied on

the fact that the transfer was deemed to be "an action comparable to transfer to

administrative segregation," which is not the case in the facts alleged by the

Plaintiff. [242 at 5-6]. Therefore, Defendant Dahl argues that she is entitled to

qualified immunity because there is no "caselaw holding that release from the

mental-health ward and movement into general population can constitute adverse

action." [*Id* at 6-7].

However, the objection misstates the discussion in *Hill* of the adverse action

element. In *Hill*, the Court explicitly states multiple times that adverse action can

be found in many different types of transfers, including but not limited to transfers

to segregated housing. For instance, the Court points out the "the BOP may not

place the prisoner in segregated housing *or transfer him to another prison* as a

means of retaliating against him for exercising his First Amendment rights." 630

F.3d at 473. This sentence obviously contemplates that there are a number of

different transfers that could count as adverse action, rather what is determinative

is that the actions "result in more restrictions and fewer privileges for prisoners are

considered adverse." *Id* at 474, *citing King v. Zamiara*, 150 Fed.Appx. 485, 494 (6th Cir.2005).

Further, the Court in *Hill* leaves open the possibility that a transfer to the general population of another prison can indeed be an adverse action "if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Id* at 474-75, *citing Siggers–El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir.2005) (holding that Plaintiff's transfer was an adverse action because it resulted in the foreseeable consequence that the prisoner would have a harder time meeting with and paying for his lawyer, thus hindering the prisoner's ability to access the courts); *Pasley v. Conerly*, 345 Fed.Appx. 981, 986 (6th Cir.2009) (holding that a threat to transfer the prisoner to a location far away from family was an adverse action because it was foreseeable that his family would not be able to visit him).

In this case, as the Magistrate pointed out, being moved from RTP, which offered prisoners art therapy, music therapy, weight pit therapy and group therapy, were not available when Plaintiff was transferred to the general population setting. [241 at 30-31]. Indeed, as the R&R points out, Defendant Dahl's "partially stricken post-discovery affidavit conceded that 'the support groups available in RTP I do not believe were available in OPT (general population).'" [*Id* at 32]. Therefore, per

*Hill*, for Plaintiff, in his particular situation, transfer from the RTP to general population, led to a decrease in privileges and more restrictions.

Given the fact that Plaintiff had a record of mental health issues and, as described below in the causation objection, there was no objective medical evidence that Plaintiff had improved enough to be removed from RTP, it was foreseeable that the negative consequences facing Plaintiff if he was transferred to general population, would be capable of deterring a person of ordinary firmness from exercising their protected first amendment rights and thus constitute adverse action. *See Pasley*, 345 F. App'x at 985.

### iii. OBJECTION 3: CAUSATION

Defendant Dahl alleges that the Magistrate erred in granting summary judgment as to the causation element in Plaintiff's Motion for Summary Judgment against Dahl.

First, Defendant Dahl argues that ARUS Sgmati's stricken affidavit states that there is no such thing as "rounds" performed by prisoners in RTP and thus Plaintiff's allegation, which the Magistrate relied on as undisputed, was not properly relied on and there is no evidence the Dahl was involved personally in any alleged cancelling of Plaintiff's "rounds."

There are two problems with this objection. First, new arguments or issues that were not presented to the Magistrate may not be raised before the District Court per the Magistrate Judge Act, 28 U.S.C. §631, *et. seq.*. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Defendant Dahl did not mention the issue of the existence of rounds in any of her briefings on Plaintiff's Motion for Partial Summary Judgment or in her own cross-motion for Summary Judgment and the objection does not cite to any portion of the record to support this statement. Therefore, she cannot raise this new argument at this point before the District Court per *Murr*. 200 F.3d at 902 n.1. Additionally, Defendant Dahl is attempting to rely on testimony that, per her own admission, has been stricken by the Magistrate and thus was obviously not before the Magistrate. Therefore, the first ground of objection to the recommendation of finding causation is denied.

Secondly, the Defendant objects that the Magistrate "improperly relied on plaintiff's characterization of the defense as relying on a case management meeting" in justifying the change in Plaintiff's GAF score to one high enough to necessitate a transfer to general population. [242 at 7-8]. However, Defendant Dahl's initial unsuccessful Motion for Summary Judgment states that a case management meeting was held at which the decision was made to move Plaintiff to General Population [110 at 1255]. Defendant's affidavit itself also supports the

Magistrates findings. In the affidavit, Defendant Dahl states that "[p]rior to the Plaintiff being discharged from the RTP, a Case Management Meeting would have taken place to discuss the progress of the Plaintiff. A positive review was made and Plaintiff was discharged from the RTP program." [183-14]. Therefore, the Magistrate was correct to rely on this statement and use it in the analysis presented in the R&R.

Defendant also objects to the Magistrate relying on Plaintiff's expert for the reasons stated in her response to the Motion for Summary Judgment and merely restates these arguments already presented to the Magistrate. These arguments were already briefed and considered by the Defendant's response to the Motion for Summary Judgment [199] and the Magistrate's Report and Recommendation [241]. Objections are meant to identify specific errors in the Magistrate's report and not restate previous arguments already considered. *Davis v. Caruso*, No. 07-10115, 2008 WL 540818, at *2 (E.D. Mich. Feb. 25, 2008) (denying an objection to an R&R where Plaintiff "merely rehashe[d] his arguments."). Additionally, "the Court is not obligated to address an objection made in this form, because the objection failed to identify the specific errors the MJ's recommendations." *Hogston v. Colvin*, No. 14-14458, 2016 WL 878329, at *5 (E.D. Mich. Mar. 8, 2016); *see*

*also Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); Fed. R. Civ. P. 72(b)(2). Therefore, this part of the objection is overruled.

The remaining objections to the causation element of the retaliation claim center on the allegation that the Magistrate erred by not looking to the medical records to support Dahl's defense, which allegedly show the reasons for discharge and support the change in the GAF through a claimed undeniable clear pattern of progress in the Plaintiff's behavior. Further, Defendant Dahl states that the Magistrate's recommendation relies solely on evidence related to temporal proximity and another unknown actor's decision to remove Plaintiff from his alleged "rounds" which is not enough to grant a summary judgment motion. Defendant argues that the Court should consider and rely on the medical evidence, given that Defendant Dahl does not remember the time at issue, to reject the recommendation and find that Defendant Dahl has shown that her actions in removing Plaintiff from RTP was based on her medical judgment, rather than any retaliatory motive.

The Court agrees with the Magistrate that, based on the evidenced presented, there is nothing to rebut the *prima face* showing of the third element of the retaliation claim and that Defendant does not present any evidence to support that

showing, and thus agrees that summary judgment should be granted as to the causation element.

Under the causation element of a prisoner's prima facie case on a First Amendment retaliation claim, the subjective motivation of the decisionmaker is at issue. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Plaintiff must show that (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right*." King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (internal citation omitted). "[T]emporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive*." Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004). "In analyzing the facts in temporal proximity cases, [the Court looks] at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

While Defendant Dahl argues that the only evidence presented is temporal proximity and that while this can support a denial of summary judgment it cannot support a granting of summary judgment, the Court disagrees. First, the Defendant

did not advance this argument before the Magistrate and as such is deemed waived. *Murr*, 200 F. 3d at 902 n.1. Also, this assertion is not presented with any citation for the Court to verify this statement. Finally, as explained above, the Court is not relying on temporal proximity alone.

The medical records show an absence of any reason or justification for the increase in the GAF of Plaintiff, there is no record of any case management meeting in the records either where the GAF level of Plaintiff was reassessed after Plaintiff submitted the Agenda to Dahl on March 20, 2012 and was removed from RTP on March 23, 2012. This, coupled with the very short time lapse of a mere three days between when Plaintiff submitted the Agenda to Defendant and the changing of the GAF by Defendant to a number that would necessitate the transfer is clearly more than mere temporal proximity; in fact the record shows that in the space of three days, Defendant submitted his Agenda to Dahl, which is protected activity, and his GAF was raised by Dahl unilaterally, without any apparent reasoning to be found in Plaintiff's medical records, to a number that would necessarily cause Plaintiff to be discharged from RTP to general population. The evidence to be found that supports a totality of the circumstances finding of causation is not rebutted by Defendant at all. Defendant has testified that she does not remember "any of the events of March 19th through 21st, 2012" [183-7 at 65]

and even after being shown the relevant medical records did not remember anything [*Id* at 66].

Further, Defendant has not presented any expert witness to examine the medical records to opine that the GAF was an appropriate increase based on the improvement shown in the medical records. Rather, Defendant's attorney states in the objections that the medical records "show the reasoning for the discharge even though Dahl does not currently remember" and that the Magistrate erred by not allowing Defendant Dahl to "rely on the medical records to show that she discharged the Plaintiff for valid medical reasons." [242 at 9]. However, the Court is not medically trained and neither is counsel and Defendant does not even draw the Court's attention to any specific evidence in the voluminous medical record. Defendant has not presented any evidence to rebut the *prima facie* showing by Plaintiff of causation and the Court adopts the R&R in their recommendation to grant summary judgment as to the causation element.

### b. OBJECTION AS TO MAGISTRATE'S RECOMMENDATION THAT DEFENDANT DAHL'S CROSS MOTION FOR SUMMARY JUDGMENT BE DENIED

Defendant Dahl filed a cross-motion for summary judgment [193] as to the retaliation claim which the Magistrate recommended denying [241]. In objection

four [242], Defendant Dahl adopts her objections one-three fully. For the reasons stated above, the Court overrules these objections and adopts the Magistrate's recommendation that Defendant Dahl's Cross-Motion for Summary Judgment is denied.

## 2. DEFENDANTS BEAUVAIS AND SERMO'S OBJECTIONS [242]

Defendants Beauvais and Sermo filed a cross-motion for summary judgment [193] as to the retaliation claim which the Magistrate recommended denying [241]. Defendants filed two objections [242] to this recommendation and Plaintiff filed a response to these objections. [246]

### a. OBJECTION 5: LACK OF PERSONAL INVOLVEMENT OF BEAUVAIS

Defendant Beauvais first objects that the Magistrate erred in not recommending that summary judgment be granted based on lack of personal involvement. Defendant Beauvais argues that the Magistrate accepted the fact that Beauvais was involved in case management of Plaintiff without any record to support such a claim and argues that the Magistrate failed to "discuss or consider at what point in time Beauvais participated in case management and what her role was there." Defendant Beauvais argues that she saw the Plaintiff only once, and that outside of that single contact, her job was to assign psych staff for prisoners

and that is what she did for Plaintiff and was not involved in Plaintiff's treatment outside of that position and therefore under law she cannot be held liable for other staff's failures and is entitled to qualified immunity.

The Court agrees with the Magistrate that there is no legitimate argument that Defendant Beauvais was not personally involved with Plaintiff's treatment. There is evidence to support that Defendant Beauvais was involved in the case management of Plaintiff. Defendant Beauvais admitted in her deposition that she performed a "clinical assessment" of Plaintiff on March 26, 2012. [212-2 at 61-64]. Further, testimony by Defendant Sermo establishes that Defendant Beauvais "participated in the treatment review meetings" for Plaintiff that happened weekly. [212-3 at 68]. The Court agrees with the Magistrate that there is evidence to show that Defendant Beauvais was personally involved in Plaintiff's medical treatment. Defendant does not cite any case law to support an argument that the type of involvement that Defendant Beauvais had in Plaintiff's treatment, per the record, is not sufficient to deny summary judgment.

At the very least, there is indeed a question of fact regarding Defendant Beauvais' involvement. While Defendant Beauvais objects that the Magistrate did not "parse out what the condition was and what Beauvais should have done at any given point in time," the Magistrate does indeed point to Plaintiff's condition at

that time, specifically using Defendant Beauvais' own words found in the assessment she made of Plaintiff. Additionally, the Magistrate also points to the testimony of Plaintiff's expert psychologist that Plaintiff's condition worsened while being treated by Beauvais and Sermo and that the treatment Plaintiff received did not "meet the ethical, moral or professional standard of care." [241 at 65].

Based on the evidence presented by both parties, Defendant Beauvais was involved in the treatment of Plaintiff and Defendant Beauvais has not presented any evidence, in either the Motion for Summary Judgment or the Objection, that she was not involved or that the treatment was adequate. Without any expert testimony to refute Plaintiff's expert and without any evidence presented that the treatment offered was adequate, the Court agrees with the Magistrate and Defendant Beauvais is not entitled to immunity.

### b. OBJECTION 6: PLAINTIFF'S EXPERT OPINIONS

In objection six, Defendants Beauvais and Sermo object that the Magistrate erred in relying on Plaintiff's expert opinion and on Lang's affidavit. First, as to the Plaintiff's expert, the Defendants argues that the expert's opinion should be "excluded as unreliable and irrelevant" under the deliberate indifference standard. [242 at 14]. Second, the Defendants object that the Magistrate relied on the

affidavit of Lang which they contend contains hearsay. For the reasons stated below, the Court rejects this objection.

### i. PLAINTIFF'S EXPERT TESTIMONY

Regarding Plaintiff's expert, Dr. Clark, Defendant argue that the expert's opinion was broad and unsupported and specifically that her opinion that Plaintiff as not treated "aggressively" is not relevant for a deliberate-indifference case. Defendant also attacks the expert's opinion because she "did not review the records, and her opinion on best practices has no bearing on the defendants' state of mind. Defendants argue that there is no evidence to show that the Defendants had reason to know that any serious medical need was unmet. Defendants object that the Magistrate should have not relied on the expert opinion and rather looked at the medical evidence provided to conclude that Defendants did not exhibit any deliberate indifference.

First, the Court is unclear what "records" Dr. Clark is alleged to have not reviewed. The expert report clearly states that Dr. Clark reviewed the "Michigan Department of Corrections Records Medical Records" and her report clearly references this review of these records for six pages of the thirteen page report. [183-4]. Therefore, this is not a valid basis for the objection. Second, on a Rule 56 Motion, the Court "must accept as true" the expert's conclusions. *See Comstock v.*

*McCrary*, 273 F.3d 693, 710 (6th Cir. 2001). The proper venue to attack the opinion evidence of an expert is in a Daubert motion or question the credibility before the factfinder. Therefore, the Magistrate correctly relied on the expert's opinions regarding the treatment of Plaintiff. Defendants did not offer any expert testimony to rebut the opinion evidence provided by Plaintiff's expert, and therefore the Magistrate properly relied on the expert evidence presented.

Second, a failure to provide adequate medical care can create a cognizable Eighth Amendment violation when "it can be shown that prison officials were deliberately indifferent to the medical needs of prisoners." "To prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010), citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The providing of some measure of treatment is not enough;

> [i]ndeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered 'grossly inadequate care' or made a 'decision to take an easier but less efficacious course of treatment.'

*McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008), quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002).

As the Magistrate pointed out, the expert opinion states that "[t]here is written evidence Mr. Berkshire was medically deprived at a time when his behavior was observably worse and his need for efficient and appropriate intervention heightened" and that "[his] condition was allowed to deteriorate." [183-4 at 8-9]. Dr. Clarke further opined that while "[P]laintiff exhibited unstable and destructive behavior," "[p]rofessional staff responded by further restricting his movements and his opportunity to get treatment." [*Id*. At 11]. According to Dr. Clark, the treatment Plaintiff received "[did] not meet the ethical, moral or professional standard of care." [*Id* at 12]. The Court agrees with the Magistrate that this evidence does support a reasonable inference that Defendants Beauvais and Sermo rendered "grossly inadequate care" and chose "an easier but less efficacious course of treatment." *See McCarthy*, 313 F. App'x at 814. Further, the expert stated that this type of treatment was given when Plaintiff's "behavior was observably worse" and thus his need for "efficient and appropriate intervention" and treatment was "heightened." [183-4 at 8-9].

In their objection, Defendants did not present an expert to refute the testimony of Dr. Clark. They do not point to any evidence in the record to refute that Plaintiff's condition was not observably worse so that they were aware of the worsening condition. Therefore, the Court is not persuaded that the Magistrate

erred in the assessment of the rejection of qualified immunity for Defendants

Beauvais and Sermo.

### ii.  LANG AFFIDAVIT

Finally, Defendants argue that the Magistrate erred by relying on the Lang

affidavit because the affidavit contains hearsay evidence.

In the Sixth Circuit, the law-of-the-case doctrine states that "a decision on an

issue made by a court at one stage of a case should be given effect in successive

stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th

Cir.1990). The law-of-the-case doctrine allows a Court to reconsider a ruling in

three circumstances; "(1) where substantially different evidence is raised on

subsequent trial; (2) where a subsequent contrary view of the law is decided by the

controlling authority; or (3) where a decision is clearly erroneous and would work

a manifest injustice." *Caldwell v. City of Louisville*, 200 F. App'x 430, 433 (6th

Cir. 2006). The only possible reason why the Court would reconsider its previous

ruling here would be under the third prong above.

The procedural history of the case is below as summarized by the

Magistrate,

> Plaintiff filed a *pro se* prisoner civil rights lawsuit on May 7, 2012.
> (Dkt.1). On June 12, 2012, this matter was referred Magistrate Judge
> Michael Hluchaniuk for all pretrial proceedings. (Dkt. 9). On August
> 11, 2014, Judge Hluchaniuk issued a report and recommendation (RR)

on the motion for summary judgment filed by defendants Sermo, Beauvais, LeDuc, and Dahl and the motion for summary judgment filed by defendant Pozios. (Dkt. 129). On November 12, 2014, District Judge Arthur J. Tarnow adopted that RR in part. (Dkt. 138)…As to defendants Pozios Beauvais, and Sermo, Judge Tarnow concluded that Brent Lang's (another prisoner) affidavit provided sufficient evidence from which a reasonable jury could infer that these defendants had the requisite culpability to satisfy the subjective prong of the deliberate indifference standard. (Dkt. 138, Pg ID 1960).

…After the first round of summary judgment motions were decided, Judge Hluchaniuk entered an order for appointment of counsel and stayed the case. (Dkt. 142). *Pro bono* counsel was finally located and appointed on June 8, 2015. (Dkt. 154). After a status conference, Judge Hluchaniuk issued a bench order setting a discovery deadline of October 26, 2015 and a dispositive motion deadline of November 25, 2015. (Dkt. 158).

…On April 14, 2016… Defendants Beauvais, Dahl, Nelson, Sermo, and Pozios filed motions for leave to file a second motion for summary judgment, which were granted by text-only order. (Dkt. 185, 188). Defendants Beauvais, Dahl, Nelson, and Sermo filed their second summary judgment motion April 20, 2016. (Dkt. 193).

[241 at 1-4].

The Court has previously determined that the Lang affidavit "affidavit provided sufficient evidence from which a reasonable jury could infer that these defendants had the requisite culpability to satisfy the subjective prong of the deliberate indifference standard." [138 at Pg ID1960]. This affidavit was first used by Plaintiff in his pro se response [115] to Defendants' Motions for Summary Judgment [110; 112] filed on January 17, 2014. At no time was this affidavit

challenged as hearsay until Defendants Sermo and Beauvais filed a reply [217] on June 3, 2016 to Plaintiff's response to their Motion for Summary Judgment [193]. This reply does not address why the issue of hearsay was not raised earlier in the case or why the Court should now assert that the affidavit is hearsay despite ruling earlier that it created a triable issue of fact for the jury. The argument presented by Defendants in the reply brief is short and devoid of any details regarding why the affidavit is hearsay. The objection clarifies that the Defendants believe the affidavit to be double hearsay that is not admissible. However, once again the Defendants do not explain the extreme delay in putting forward this hearsay argument or why the Court should now reject evidence that it previously relied on to deny summary judgment.

Given the underdeveloped argument, the time delay in raising this argument, and the  fact that the affidavit does not serve to impose liability on Defendants, the Court does not believe that there is any evidence of a manifest injustice and rejects Defendants' objection to the Lang affidavit.

### 3. DEFENDANT POZIO'S OBJECTIONS [243]

Defendant Pozio filed a Motion for Summary Judgment [200] on May 10, 2016. Plaintiff responded on June 3, 2016 [221] and Defendant replied [226] on June 16, 2016. The Magistrate recommended denying this motion. Defendant

Pozio filed three objections [243] to this recommendation on March 17, 2017 and

Plaintiff filed a response to these objections on March 31, 2017 [247].

**a. OBJECTION 1: MAGISTRATE DID NOT CONSIDER ALL OF DR. CLARK'S TESTIMONY**

Defendant argues that the Magistrate failed to consider the evidence

provided by Dr. Clark on cross-examination. Defendant argues that if that evidence

is examined, it is clear that the care and treatment provided by Defendant was

reasonable and not criminally reckless and therefore did not rise to the level of

deliberate indifference.

First, the Defendant does not state a correct standard for deliberate

indifference. As stated above, deliberate indifference can be established by when

"it can be shown that a defendant rendered 'grossly inadequate care' or made a

'decision to take an easier but less efficacious course of treatment.'" *McCarthy v.

Place*, 313 F. App'x 810, 814 (6th Cir. 2008), quoting *Terrance v. Northville Reg'l

Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002). Therefore, that statement is

legally incorrect.

Second, the objection does not point the Court to any specific evidence in

the cross-examination of Dr. Clark that would support a rejection of the

Magistrate's considered decision and provides no analysis on why specific

testimony from Dr. Clark would support a finding of no deliberate indifference. It is not the place for the Court to act as the attorney for Defendant. The Court finds that Plaintiff has forfeited whatever argument she intended to present for failure to develop it. See e.g., Hayward v. Cleveland Clinic Found., 759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir. 1997)). Therefore this objection is overruled.

### b. OBJECTION 2: ALLEGATION OF WITHHOLDING PLAINTIFF'S MEDICATIONS RESULTING IN AN ATTEMPTED SUICIDE

It is unclear what portion of the R&R that Defendant is challenging in this objection. The objection does not reference the R&R in any manner and rather appears to be making an independent argument that was already advanced in the Motion for Summary Judgment. Under Federal Rule of Civil Procedure 72(b)(2), Local Rule 72.1(d)(1) per the R&R issued by the Magistrate, any objections must be specific and cite precisely the provision of the R&R to which it pertains.

The objection itself does not give the Court any clue as to what portion of the R&R the Defendant disagrees with and rather leaves it up to the Court to pinpoint the disagreement in the 69 page order. Consideration of these objections by the Court would be "'an inefficient use of judicial resources,' as it essentially 'mak[es] the initial reference to the magistrate useless' and leaves 'even the most perspicacious judge to guess at' the faults that Plaintiff purports to find in the

Magistrate Judge's analysis. *Mohlman v. Deutsche Bank Nat'l Trust Co.*, No. 15-11085, 2016 WL 826049, at *2 (E.D. Mich. Mar. 3, 2016); citing *Howard v. Secretary of Health & Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Even if the Court did address the substance of the objection, the Court does not find reason to disagree with the Magistrate's recommendation. Defendant's objection alleges that withholding of medication cannot establish a claim of deliberate indifference because this action was merely a disagreement on course of medical treatment and not a case of ignoring Plaintiff's condition. However, the R&R specifically stated and the Court agrees that Plaintiff's claim against Defendant Pozios was never solely what the case against Pozios consisted of; rather the "crux of the case is about the delay in getting plaintiff into the crisis stabilization program, given his behaviors, including his refusal to take his medications." [241 at 54-5]. Without any argument presented in the objection as to why this is not a valid conclusion, the Court rejects this objection.

### c. OBJECTION 3: DR. POZIOS' ALLEGED FAILURE TO TIMELY REFER PLAINTIFF TO A HIGHER LEVEL OF TREATMENT

Defendant states that Dr. Clark and Dr. Kezlarian both found no fault in Defendant's treatment of Plaintiff, including the alleged failure to timely refer Plaintiff to a higher level of treatment, Plaintiff is merely disagreeing with

treatment decisions, which cannot constitute an Eighth Amendment violation. *See McFarland v. Austin*, 196 F. Appx. 410, 411 (6th Cir. 2006).

Once again, the objection does not reference the R&R in any way and the analysis above in section 3(b) applies here as well. Additionally, this objection fails to take into account the actual decision of the Magistrate, who relied on the Lang affidavit/testimony as well as other evidence to find that there was a question of fact whether Defendant Pozios treated Plaintiff with deliberate indifference or not. The Lang affidavit, and Lang's later deposition testimony, present evidence that Pozios "stated that Randy Berkshire was a 'piece of shit' and he wanted to use his death as an example to other prisoners," and also testified that Defendant Pozios said that he wanted Plaintiff to kill himself and asked Lang to lie on his behalf. [115, Pg ID 1478 at ¶10; 189-4 at 44-50]. Further, as the Magistrate points out, Defendant Pozios was aware of the fact that Plaintiff had previous neurological diagnoses, had been sent to an outside hospital, was refusing food, drinks and his medications and yet failed to take any action until the day that Plaintiff attempted to commit suicide. The R&R concluded that this was enough to create a reasonable inference that Defendant Pozios was deliberately indifferent to Plaintiff's needs by failing to take action at a time when his behavior was worsening in a way that Dr. Clark opines was noticeable.

Defendant's objection does not address the reasoning presented in the R&R and instead appears to reargue a point already argued in the reply brief to the Motion for Summary Judgment. The Court cannot see what point of reasoning the Defendant is disagreeing with, and, upon review of the record, the Court agrees with the Magistrate that the Lang affidavit/testimony as well as other evidence presented and discussed by the Magistrate creates a question of fact for the jury of whether Defendant Pozios acted deliberately indifferently to Plaintiff and this objection is overruled.

### 4. PLAINTIFF BERKSHIRE'S OBJECTION [244]

Defendant Nelson filed a cross-motion for summary judgment [193] as to the retaliation claim which the Magistrate recommended granting [241]. Plaintiff filed a single objection [244] to this recommendation and Defendant did not file a response.

Plaintiff's sole objection to the R&R is in regards to the recommendation that the Court grant Defendant Nelson's Motion for Summary Judgment. Plaintiff contends that the Magistrate did not correctly apply the reasoning of *Barker v. Goodrich*, 649 F. 3d 428 (6th Cir. 2011). *Barker* held that it was clearly established law that short deprivations from bathroom facilities may "violate the Constitution when they lack a penological purpose." *Id* at 436-37. The Magistrate recommended

that Defendant Nelson's Motion for Summary Judgment be granted because "the facts in this case are distinguishable from *Barker* and there was a legitimate penological purpose to restrain plaintiff (he was suicidal) which was plainly absent in *Barker*." [241 at Pg ID 5081].

In *Barker*, the Court examined the evidence in the light most favorable to the Plaintiff and determined that there was no legitimate penological purpose based on the alleged actions of the Defendant. The Court agrees with Plaintiff that the correct analysis under *Barker* is therefore whether the actions at issue, under the facts most favorable to the Plaintiff, were taken for a legitimate penological reason, not merely that a legitimate penological purpose existed. Therefore, the Court must look to the facts presented by Plaintiff to consider whether the Defendant Nelson's refusal of Plaintiff to use the bathroom was taken in consideration of Plaintiff's suicidal condition.

Plaintiff presented his own deposition testimony as well as testimony from a witness that state that when Plaintiff asked Defendant Nelson to use the bathroom, Defendant Nelson responded, "you're gonna to stay just like that until your mental illness goes away!." [115-1, Pg ID 1615 at ¶24; 93, Pg ID 998 at ¶¶60-61; 112-22, Pg ID 1414 at ¶¶32-34]. Plaintiff also has submitted evidence that he was "noncombative," "not threatening" and "posed no danger to [him]self or others"

when he asked Defendant Nelson to use the bathroom. [115-1, Pg ID 11615].

Defendant Nelson testified that he did not make that statement to Plaintiff and

claims that his actions were in furtherance of a legitimate penological purpose.

[193-6 at ¶4]. The Court agrees with Plaintiff that this is a question for the jury to

determine whose story they believe in terms of whether the refusal to use the

bathroom was done in furtherance of a legitimate penological purpose or not.

Additionally, while the Magistrate stated that there were factual differences

between *Barker* and this case, this was not elaborated on. The Court agrees that

there are differences in facts, however it disagrees that these differences dispose of

the case. In *Barker*, Plaintiff was placed in the observation cell with his hands

cuffed. *Barker*, 649 F.3d at 434-35. No officer asked or offered to remove the

handcuffs until the next morning. *Id*. While Barker was in the cell, he was not able

to use the bathroom or get a drink of water. *Id*. The handcuffing also made it

uncomfortable to sit or lie down so he mostly stood. *Id*. The prolonged handcuffing

caused pain to his hands, wrists and shoulders. *Id*. In this case, while Plaintiff was

not restrained in a way that added to his discomfort, he is alleged to be denied

access to the bathroom to the point of being left lying in his own urine and feces

for hours. This is factually distinct from *Barker* but is sufficient to create an Eighth

Amendment question.

Additionally, the Magistrate points out that the Plaintiff only made a single request to use the bathroom and does not allege that Nelson was monitoring him the entire time, distinguishing it from *Barker*. However, under the facts as presented by Plaintiff, Defendant Nelson refused Plaintiff's request shortly after midnight and from "0100 to 0700 hours no official entered [Plaintiff's] cell despite several hours of attempting to get released from [top of bed restraints] for an opportunity to...use the resstroom." [115-1, Pg ID 1616]. According to the record, Defendant Nelson was on duty at least until 0500 and had supervisory authority over those who were overseeing the treatment of Plaintiff. [221-6 at 56]. The Court refuses to fault Plaintiff for only requesting to use the bathroom a single time when he was only presented the opportunity to request the bathroom a single time.

The Court agrees that there is a material question of fact of whether Defendant's actions were taken for a legitimate penological reason and disagrees that *Barker* is not applicable to this case. Therefore, the Court declines to adopt the Magistrate's recommendation as to Defendant Nelson and sustains Plaintiff's objection.

## CONCLUSION

Based on the reasoning above, the Court overrules the objections of Defendants Beauvais, Dahl, Sermo [242] and Pozios [243] and sustains the

objection [244] of Plaintiff. Accordingly, the R&R is adopted in part; Plaintiff's

Motion for Partial Summary Judgment against Defendant Dahl [183] is

**GRANTED**; Defendant Dahl, Defendant Beauvais and Defendant Sermo's Second

Motion for Summary Judgment [193] is **DENIED**; and Defendant Pozios' Second

Motion for Summary Judgment [200] is **DENIED**. The Court declines to adopt the

R&R in part, and Defendant Nelson's Second Motion for Summary Judgment

[193] is **DENIED**.

    **IT IS ORDERED** that the Report and Recommendation [200] is

**ADOPTED in part.**

    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

Judgment [183] is **GRANTED.**

    **IT IS FURTHER ORDERED** that Defendants' Second Motions for

Summary Judgment [193; 200] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's objection [244] is

**SUSTAINED** and Defendants' objections [242; 243] are **OVERRULED**.

**SO ORDERED**.

                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: August 2, 2017                   Senior United States District Judge


                            Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
Electronic Filing on August 2, 2017.

                                        s/Teresa McGovern
                                        Case Manager Generalist